[No. 819.   Decided June 22, 1893.]

SARAH PACKSCHER, *Appellant*, v. JOHN N. FULLER *et al.*,
*Respondents.*

LIMITATION OF ACTIONS — WHEN TIME BEGINS TO RUN — BOUNDA
RIES — HOW ASCERTAINED.

Under the statute of 1881, which reduced the limitation for the
commencement of actions to recover the possession of real estate
from twenty to ten years after the accrual of the cause of action,
a party whose action had not been barred under the old law has
the full period of ten years after the taking effect of the act of 1881
in which to commence such action, although the time had begun
to run under the former law.

The patentee from the government, of the northeast quarter of a
certain section, which was described as containing 160 acres of
land, made conveyances thereof as follows: To one grantee, a tract
commencing 20 rods south of the northeast corner of the northwest
quarter of the northeast quarter of said section, thence 8 rods west,
thence 20 rods south, thence 8 rods east, thence 20 rods north to the
beginning; to another grantee, a tract commencing at the north-
west corner of the northeast quarter of the northeast quarter of
said section, thence south 40 rods, thence east 20 rods, thence north
40 rods, thence west 20 rods to the beginning.  Both grantees
claimed a strip of land averaging eighteen feet in width.  In an ac-
tion by one for possession of said strip of land it was shown that
none of the lines of said quarter section were one-half mile in
length.  *Held*, That the starting point for the survey of the two
tracts in controversy should be the exact middle of the line between
the northeast corner of the section and the half-mile post set by the
government surveyors, and that a line run south from that point
would establish the boundary between the two tracts.

*Appeal from Superior Court, Pierce County.*

*Pritchard, Stevens, Grosscup & Seymour*, and *W. C.
Sharpstein*, for appellant.

*Carroll & Carroll*, and *H. M. Hagerman*, for respondents.

The opinion of the court was delivered by

ANDERS, J.— On August 22, 1868, Howard Carr, who,
as grantee of the United States, was the owner of the north-

east quarter of section 31, township 21 north, of range 3 east, conveyed, by deed duly executed and recorded, to the appellant, a portion thereof described as follows:

"Commencing twenty rods south of the northeast corner of the northwest quarter of the northeast quarter of section 31, township 21 north, of range 3 east, running thence eight rods west, thence twenty rods south, thence eight rods east, thence twenty rods north to the place of beginning, containing one acre."

And on October 2, 1872, Howard Carr and wife conveyed by deed duly executed to one Job Carr another portion of his said land described as follows:

"Beginning at the northwest corner of the northeast quarter of the northeast quarter of section 31, township 21 north, of range 3 east of the Willamette Meridian, running thence south forty rods, thence east twenty rods, thence north forty rods, thence west twenty rods, to the place of beginning, and containing five acres."

This five acre tract of land Job Carr in the year 1873 surveyed and platted as Job Carr's First Addition to Tacoma City. On December 13, 1880, lots eight and nine, and fractional lot seven, of block thirty, of this addition, according to the plat thereof, were conveyed to the respondent Matthews, who, on April 10, 1883, conveyed by deed an undivided one-half of the same to the respondent, John N. Fuller. These lots, as designated on the ground, were, when purchased by respondents, inclosed by a fence which seems to have been maintained ever since, and which was built perhaps as early as the year 1875. The land within the inclosure has been in the possession of the respondents and their grantors ever since the fence was erected, and each and every occupant has considered and claimed it as a part of Job Carr's First Addition to Tacoma, and not as a part or parcel of any other premises.

It will be seen by an inspection of the description of the premises conveyed to the respective parties to this contro-

versy that the land of the appellant lies on the west, and
that of the respondents on the east, side of the dividing line
between the northwest quarter of the northeast quarter and
the northeast quarter of the northeast quarter of section
31, township 21 north, of range 3 east.    And while the re-
spondents at all times believed that their fence was upon
this division line, the appellant has at no time claimed to be ·
the owner, or entitled to the possession, of any land to the
east of said line.    But in the year 1889 the appellant caused
the land described in her deed to be surveyed, and claims
to have then ascertained that a portion of her premises
one hundred and nineteen feet long and nineteen feet wide
at one extremity and seventeen feet wide at the other, was
within the inclosure of the respondents.    She demanded the
removal of the fence.    Her demand was not complied with,
and she thereupon instituted this action for the possession
of said strip of land and for damages for the wrongful deten-
tion thereof.    It would seem from the pleadings in this case
that the real contention between these parties is as to the
location of the true line dividing their respective premises.
But, from the course taken at the trial, it appears that the
cause also proceeded upon the further theory of the re-
spondents that they were entitled to the disputed premises
by virtue of having been in adverse possession thereof for
the period of time prescribed by the statute of limitations.

The court recognized the question of adverse possession
as being properly involved in the case, and instructed the
jury upon that subject.    The court, in effect, charged the
jury that ten years' adverse possession would bar plaintiff's
right of recovery.    This, the appellant claims, was error,
and insists — (1) That the statute passed in the year 1881
(Code of 1881, § 26, Code Proc., § 112), limiting the time
for the commencement of actions to recover the possession
of real estate to ten years after the cause of action shall
have accrued, is not applicable to this case; and (2) that

if it is applicable then the time must be computed from
the taking effect of the statute, and that the jury should
have been so instructed.    We think the statute of 1881
must govern, unaffected by the provisions of the prior law,
and that the plaintiff (appellant here) had the full period
of ten years after it took effect in which to commence her
action.    No mention is made of existing rights of action
in this statute of 1881, and we cannot presume that the
legislature intended it to have a retrospective operation in
the absence of anything more indicative of such an inten-
tion than the general language of the provision itself.
*Sohn v. Waterson*, 17 Wall. 596.

The rule as to which statute governs when a change has
been made in the period of limitation is laid down in Wood
on Limitation of Actions, p. 30, as follows:

''If, before the statute bar has become complete, the
statutory period is changed, and no mention is made of ex-
isting claims, it is generally held that the old law is not
modified by the new, so as to give to both statutes a pro-
portional effect; but that the time past is effaced, and the
new law governs.    That is, the period provided by the
new law must run upon all existing claims, in order to
constitute a bar.    In other words, the statute in force at
the time the action is brought controls, unless the time
limited by the old statute for commencing an action has
elapsed, while the old statute was in force, and before the
suit is brought, in which case the suit is barred, and no
subsequent statute can renew the right or take away the
bar.''

It is true that § 133 of the Code of Procedure provides
that when a limitation or a period of time prescribed in
any existing statute for acquiring a right or barring a
remedy has begun to run before this code takes effect, and
the same or any other limit is prescribed in this code, the
time which has run shall be deemed part of the time pre-
scribed by such limitation, but this court held, in *Baer v.
Choir*, 32 Pac. Rep. 776, that inasmuch as this provision

was not a part of the general statute of limitations found
in chap. 2 of the Code of 1881, as passed by the legisla-
ture, but was originally § 1294 of the act of November 16,
1881, relating to crimes and punishments and proceedings
in criminal cases, and also § 1683 of the act of November
4, 1881, defining the jurisdiction and practice of probate
courts, said general statute is not affected or controlled by
it.    That section can, therefore, have no bearing upon this
case and will not be further considered.    It is not con-
tended by the respondents that this action was not begun
within ten years after the statute of 1881 went into opera-
tion, and it therefore follows from what we have already
said that the question of adverse possession must be elimi-
nated from the consideration of this case.    And, indeed,
the same result would follow if the former statute of lim-
itation of twenty years could be pleaded in bar of the
action.

This leaves but one question to be determined, namely,
what is the proper method of determining the location
upon the ground of the dividing line between the subdivi-
sions above mentioned of the land formerly owned by
Howard Carr?

It is claimed by the respondents that this line was cor-
rectly ascertained and established when the addition to the
city was surveyed and platted where respondents and their
grantors have always claimed it to be, and that it cannot
now be changed after the lapse of so many years.    In mak-
ing the survey of the five acre tract conveyed to Job Carr,
the surveyor located the northeast corner of the northwest
quarter of the northeast quarter of section 31 — the start-
ing point mentioned in the deed and also in that of the ap-
pellant — at a point on the north line of the section 1320
feet west of the northeast corner thereof as established by
the government survey, on the theory that, as the patent to
Howard Carr stated that that quarter section contained one

hundred and sixty acres of land, the point sought for must of necessity be that distance—one-fourth of a mile—from the corner post. From the point thus established he proceeded to lay off the land covered by the deed by following the courses therein specified, and it is insisted that the north and south line thus located is the true line between the premises in dispute. This is controverted by the appellant. And it is urged on her behalf that the starting point called for in the deeds from Howard Carr lies midway between the northeast and the northwest corner of that quarter section. On this theory the appellant's survey was made. The surveyor who did the work testified that he ascertained this starting point by first platting the entire section, according to the government survey as shown by the original government posts, all of which were found, as well as the witness trees to those posts; that he carefully measured the four boundaries of the northeast quarter and established the middle points of those boundaries, and then struck lines across, and quartered the northeast quarter; that in fact all of the boundaries were less than half a mile in length, although represented as being half a mile in the government field notes. In other words, he fixed his starting point exactly in the middle of the line between the northeast corner of the section and the half-mile post west on the north line, according to actual measurement upon the ground. And we think that the point so established was the true starting point called for in the deeds, and that a line drawn south from that point to the middle point of the south boundary is the true line of division between the premises in controversy.

If the land in dispute lies west of that line, then the appellant is entitled to recover its possession, but otherwise if it lies on the east side thereof. And this will be the only question to be determined upon a new trial.

The judgment is reversed, and the cause remanded to

the court below for a new trial in accordance with this opinion.

DUNBAR, C. J., and HOYT and SCOTT, JJ., concur.

STILES, J., disqualified.