[Nos. 29288, 29289, 29290, 29291. *En Banc.* August 30, 1944.]

I. C. LANE, *Appellant,* v. THE DEPARTMENT OF LABOR AND INDUSTRIES *et al., Respondents.*

I. C. LANE, *Appellant,* v. THE DEPARTMENT OF LABOR AND INDUSTRIES *et al., Respondents.*

RALPH ROWLEY, *Appellant,* v. THE DEPARTMENT OF LABOR AND INDUSTRIES *et al., Respondents.*

JOHN MOORE, *Respondent,* v. THE DEPARTMENT OF LABOR AND INDUSTRIES, *Defendant,* NORTHWEST DOOR COMPANY, *Appellant.*[1]

[1]Reported in 151 P. (2d) 440.

*Allen & Carey,* for appellants Lane and Rowley, and respondent Moore.

*T. J. Hanify, Grosscup, Morrow & Ambler, L. B. Donley, Hulbert, Helsell & Paul, Little, Leader, LeSourd & Palmer,* and *Laube & Laughlin,* for respondents Defiance Lbr. Co. and Gange Lbr. Co., and appellant Northwest Door Co.

*The Attorney General* and *L. E. O'Neill, Assistant,* for respondent Department of Labor & Industries.

GRADY, J.—This appeal involves the claims of injured workmen for compensation for aggravation of injuries and for which they had previously received awards. In the two cases of I. C. Lane and in that of Ralph Rowley, the court affirmed the orders of the department of labor and industries disallowing the claims on the ground that they had not been made within the time limited by law. In the case of John Moore, the court reversed the order of the

department disallowing his claim upon the same ground. On appeal to this court, the cases were consolidated. The parties to the appeal will be referred to as the claimants, the employers, and the department.

The questions to be determined are whether the act of 1941 applies to barred claims, and, if so, is it constitutional.

The original act of 1911, chapter 74, p. 345, by § 5 (h), p. 360, provided as follows:

"If aggravation, diminution, or termination of disability takes place or be  discovered after the rate of compensation shall have been established or compensation terminated in any case the department may, upon the application of the beneficiary or upon its own motion, readjust for future application the rate of compensation in accordance with the rules in this section provided for the same, or in a proper case terminate the payments."

No limitation of time was fixed within which the workman was required to make application to the department of labor and industries. The law remained in. this condition until the enactment of chapter 310, Laws of 1927, p. 813, when § 4 (h), p. 844, was amended so as to place a limitation of three years upon the making of a claim for compensation for aggravation of injuries. This amended section was carried forward into chapter 132, Laws of 1929, p. 338, § 2. It was again amended by chapter 209, Laws of 1941 (referendum measure No. 22), p. 633, § 1 (Rem. Supp. 1941, § 7679 (h)), and now reads as follows:

"If aggravation, diminution, or termination of disability takes place or be discovered after the rate of compensation shall have been established or compensation terminated, in any case the Director of Labor and Industries, through and by means of the Division of Industrial Insurance, may, upon the application of the beneficiary, made within five years after the establishment or termination of such compensation, or upon his own motion, readjust for further application the rate of compensation in accordance with the rules in this section provided for the same, or in a proper case terminate the payment: *Provided,* Any such applicant whose compensation has heretofore been established or terminated shall have five (5) years from the taking effect of this act within which to apply for such readjustment."

At the time this act became effective, all of the claims now under consideration were barred by the three-year limitation period.

■ It is a general rule that a statute fixing a time limitation upon the assertion of a right or the enforcement of an obligation will not be held *by construction* to operate retroactively, and it will be deemed so to operate only when, by its plain terms or by necessary implication, such intention is apparent. It is not necessary, however, that the statute expressly state in words that it shall so operate, or that rights or obligations already barred shall be revived, but it is sufficient if the plain words of the statute carry such meaning and leave no room for doubt.

■ We have in many cases applied the rule that, where the language of a statute is plain and clear and capable of but one meaning, there is no room for construction and none is needed. *State ex rel. George v. Seattle,* 184 Wash. 560, 52 P. (2d) 360; *Carkonen v. Alberts,* 196 Wash. 575, 83 P. (2d) 899, 135 A. L. R. 209; *Shelton Hotel Co. v. Bates,* 4 Wn. (2d) 498, 104 P. (2d) 478; *Smith v. Department of Labor & Industries,* 8 Wn. (2d) 587, 113 P. (2d) 57. A very clear and comprehensive statement of the rule is found in 50 Am. Jur. 204, Statutes, § 225, as follows:

"A statute is not open to construction as a matter of course. It is open to construction only where the language used in the statute requires interpretation, that is, where the statute is ambiguous, or will bear two or more constructions, or is of such doubtful or obscure meaning that reasonable minds might be uncertain or disagree as to its meaning. Where the language of a statute is plain and unambiguous and conveys a clear and definite meaning, there is no occasion for resorting to the rules of statutory interpretation, and the court has no right to look for or impose another meaning. In the case of such unambiguity, it is the established policy of the courts to regard the statute as meaning what it says, and to avoid giving it any other construction than that which its words demand. The plain and obvious meaning of the language used is not only the safest guide to follow in construing it, but it has been presumed conclusively that the clear and explicit terms of a statute expresses the legislative intention, so that such

plain and obvious provisions must control. A plain and unambiguous statute is to be applied, and not interpreted, since such a statute speaks for itself, and any attempt to make it clearer is a vain labor and tends only to obscurity."

■ The legislature has used the language quoted above three different times: in 1927, 1929, and 1941. Each time it spoke on the subject matter involved in the workmen's compensation act it was carrying out a social objective; namely, to give further relief to injured workmen than had been given by previous legislation in view of recognized changed economic conditions. In doing so there could be no reason for any discrimination between injured workmen. The one whose compensation has once been established or terminated, but who has not made claim for aggravation of his injuries within the three-year period prescribed, is just as much in need of aid as is one who has done so, or as one who might later make such a claim; and, as the legislature did not affirmatively exclude such injured workman, it is very clear that the plain language of this statute is all-inclusive. If the statute stopped at the proviso, then all that this court has said about applying statutes of limitation prospectively and that the law in force at the time the claim of an injured workman accrued must govern, would be applicable. It would seem as though the lawmakers sensed this and, to avoid such effect, added the proviso: *"Any* such applicant whose compensation has *heretofore* been established or terminated shall have five (5) years *from the taking effect of this act* within which to apply for such readjustment." (Italics ours.)

We, therefore, hold that the act applies to the claims of the claimants, and that they were timely made.

On the constitutional question raised by the employers, we must take into consideration the type of statute that is now before us and bear in mind that it is a part of the legislation enacted pursuant to the police power of the state.

The employers assert that, after a claim of the kind before us is once barred, it cannot be revived by subsequent legislation, because a right of immunity in favor of the employer arises which constitutes a vested right and its im-

pairment is protected by constitutional inhibitions. The claimants and the attorney general contend that the act relates only to the remedy of the workman and does not affect any vested right of the employer. Many authorities are cited by the respective counsel. There is a conflict of authority on the general subject, but much of it disappears when the nature and scope of the different statutes are considered.

There are two types of statutes which the courts had to apply. One of them is the statute which either by its plain terms or by the construction given it by the court makes the limitation of time inhere in the right or obligation rather than the remedy. It is sometimes referred to as a statute of nonclaim, and, strictly speaking, is not a statute of limitations at all. In its usual form the statute creates some right or obligation and a time is fixed within which the right must be asserted or the obligation sought to be enforced, or the same will be barred. When the limitation period expires, the right or obligation is extinguished and cannot be revived by a subsequent statute enlarging the time limitation. Illustrations of nonclaim statutes in this state are those providing for liens of laborers and materialmen, claims against estates of deceased persons, and claims for damages against municipal corporations.

The courts seem to be in substantial accord that a statute of limitations cannot enlarge the time for the commencement of an action when the time limitation therefor is fixed by contract; also, in cases where one has been in possession of property for the period required to bar an action by the real owner for its recovery, the theory being that, by the lapse of the statutory time, title to the property has passed and it cannot be divested by a statutory revival of the right of action to recover its possession. This court has held that the right to enforce a lien for street improvements cannot be enlarged by statute after the time limit therefor has expired. *Seattle v. DeWolfe,* 17 Wash. 349, 49 Pac. 553. In *Earle v. Froedtert Grain & Malting Co.,* 197 Wash. 341, 85 P. (2d) 264, and *Peeples v. Hayes,* 4 Wn. (2d) 253, 104 P. (2d) 305, it was decided, with reference

to a statute relating to actions to recover on the ground of unlawful preferences, that it is not in its strict sense one of limitation at all, but one that goes to the right to recover, and not merely to the remedy. This is the theory of the leading case of *Danzer & Co. v. Gulf & S. I. R. Co.,* 268 U. S. 633, 69 L. Ed. 1126, 45 S. Ct. 612, relied on by counsel for the employers.

The other type of statute is one which relates only to the remedy and has nothing to do with any right or obligation, does not inhere in either, and is wholly independent of them. It is a statute of limitations in its strict sense, and, although a remedy may become barred thereunder, the right or obligation is not extinguished. It is a statute of repose.

█ There is no constitutional inhibition against the revival of a barred remedy. The leading case on the subject is *Campbell v. Holt,* 115 U. S. 620, 29 L. Ed. 483, 6 S. Ct. 209. We have adopted and followed the rule of that case in *Herr v. Schwager,* 145 Wash. 101, 258 Pac. 1039. The distinctions between the different types of statutes as bearing upon the question of whether a claim against which a limitation has run can be revived by a subsequent limitation statute, will be found in the annotations and the cases to which they are appended in 36 A. L. R. 1316, 46 A. L. R. 1101, 67 A. L. R. 297, 78 A. L. R. 1294, 133 A. L. R. 384.

There are cases contrary to *Campbell v. Holt* and *Herr v. Schwager* which hold that, if the remedy is barred, the immunity from suit is a right that cannot be impaired by a statute of revival, but we definitely declined in the *Herr* case to follow them, and we have not departed from the doctrine of that case.

█ A claim of a workman of the kind before us is a personal one for a further allowance out of the accident fund, and when the nature of the fund is analyzed and the relationship to it of an employer and an injured workman is considered, it readily appears that the act before us is not in any sense a statute of nonclaim, but is of a character such as to have applicable to it the doctrine of the case of *Herr v. Schwager.*

When the original act of 1911 came before the court, it was decided that the money an employer paid into the accident fund was a license tax on his privilege to carry on his business. *State ex rel. Davis-Smith Co. v. Clausen,* 65 Wash. 156, 117 Pac. 1101, 37 L. R. A. (N. S.) 466. This view was approved in *Mountain Timber Co. v. State of Washington,* 243 U. S. 219, 237, 61 L. Ed. 685, 37 S. Ct. 260, Ann Cas. 1917D, 642, in which it is said:

"In the present case the Supreme Court of Washington ('75 Washington, 581, 583), sustained the law as a legitimate exercise of the police power, referring at the same time to its previous decision in the *Clausen Case,* 65 Washington, 156, 203, 207, which was rested principally upon that power, but also (pp. 203, 207), sustained the charges imposed upon employers engaged in the specified industries as possessing the character of a license tax upon the occupation, partaking of the dual nature of a tax for revenue and a tax for purposes of regulation."

We followed this viewpoint in *State v. Vinther,* 176 Wash. 391, 29 P. (2d) 693; and the same thought is the basis of *State ex rel. Crabb v. Olinger,* 196 Wash. 308, 82 P. (2d) 865.

The workmen's compensation act and its amendments is an exercise of the police power of the state, and, in their enactment, the legislature did not encounter many of the constitutional limitations it might have otherwise. *Raymond Lbr. Co. v. Raymond Light & Water Co.,* 92 Wash. 330, 159 Pac. 133, L. R. A. 1917C, 574; *Shea v. Olson,* 185 Wash. 143, 53 P. (2d) 615, 111 A. L. R. 998. In the latter case we said, p. 153:

"We next consider the provisions of Art. I, §§ 3 and 12 of the state constitution and the fourteenth amendment of the United States constitution, relating to due process and the equal protection of the laws.

"None of these constitutional provisions apply to laws enacted by a state legislature in the exercise of its police power. We have repeatedly so held. [Citing authorities.]"

The fact that an employer has a right to appear and contest a claim of an injured workman and to take an appeal from an adverse decision, does not give him any

right in or to the accident fund, and we have never held that he has any so-called vested right therein. The reason he may contest a claim is that his cost experience would be affected by an unlawful use of the fund. When it is finally decided that a claimant is entitled to compensation, all further interest on the part of the employer ceases, and all procedural and administrative questions are of no concern of his, but lie only between the claimant and the department.

The act took away from the workman his common-law right of action for negligence. In its place it provided for industrial insurance. The employer is taxed to create and maintain an accident fund. The state administers the fund through one of its agencies. The act creating the right of the workman to compensation fixed a time limit within which he must make his claim after the day upon which the injury occurred, or the right thereto accrued, and provided that if he did not do so such claim would not be enforcible; but it did not fix any time limit within which an injured workman whose rate of compensation had been established or his compensation had been terminated might apply for an adjustment in the event of aggravation of his injury thereafter. Provision was made that the department might, "upon its own motion readjust for further application the rate of compensation. . . . " The law remained this way until 1927, when it was provided that a workman claiming aggravation must make claim therefor within a three-year period.

The employer has never had anything to say about when a claim for aggravation of injury may be made, and the fact that after sixteen years of operation of the law the legislature decided to require the injured workman claiming aggravation to make his claim within a limited time, did not change the status of the employer with reference to the accident fund. It did not thereby create a statute of nonclaim. It merely affected the remedy of the injured workman. It was enacted for the benefit of the department so that it would not have to consider stale claims, when perhaps the securing of evidence as to their merit might

be difficult or impossible. The claim of the workman is not one against the employer and the limitation period was not made for the employer's benefit.

The limitation periods fixed by the acts of 1927, 1929, and 1941 have no relation to the right to a readjustment of compensation created by the act of 1911, and do not inhere therein, but relate only to the remedy of the claimant. The lapse of time limitation does not build up any immunity in favor of the employer or bring into being any vested right that can be affected if the time limitation is changed. We held in *Mattson v. Department of Labor & Industries,* 176 Wash. 345, 29 P. (2d) 675, that no vested right of an injured workman was affected when a limitation period was provided where none had existed before, and the same authority exists to enlarge the time for making claims for readjustment, and, for the same reasons given in that case, no vested right of an employer would be affected.

The act of 1941 before us is so plain and all-inclusive in its wording as not to need construction. It applies to all applicants for readjustment whose compensation has been established or terminated, and in passing it the legislative authority has encountered no constitutional inhibitions.

The judgments in the Lane and the Rowley cases are reversed, and the judgment in the Moore case is affirmed.

BEALS, STEINERT, BLAKE, ROBINSON, JEFFERS, and MALLERY, JJ., concur.

SIMPSON, C. J., dissents.

MILLARD, J. (dissenting)—While engaged in extrahazardous work in the employ of Defiance Lumber Company, I. C. Lane sustained an injury in January, 1927, for which he was allowed compensation by the department of labor and industries and his claim was closed by a departmental order February 28, 1927, from which he did not appeal. Lane applied, January 26, 1943, to the department for a reopening of his claim on the ground that his disability had become aggravated since his claim was closed. The application was denied for the reason that the right to a reopening of the claim was barred under the three-year

limitation included in the industrial insurance statute since 1927. Lane then applied for a rehearing before the joint board of the department on the ground that referendum measure No. 22, adopted at the general election November 3, 1942, permitted reopening of a claim upon an application made at any time within five years after the effective date of the measure, despite the fact that the claim was barred before that date. From the order entered by the joint board denying the petition, the claimant appealed to the superior court for Pierce county, which affirmed the decision of the department. Plaintiff appealed.

In the second cause, Lane was injured in 1935 while engaged in extrahazardous work in the employ of Gange Lumber Company. His claim was closed by the department in January, 1936. In 1943 Lane's application for reopening of his claim was denied and on his appeal to the superior court from the order of the joint board denying his petition for rehearing he was unsuccessful. From that judgment plaintiff has appealed.

In the third case, Ralph Rowley sustained an injury while engaged in extrahazardous work in the employ of Gange Lumber Company. His claim was closed in 1938 and no steps were taken by him for reopening of the claim until 1943. The procedure in his case is the same as in the Lane cases, and he appealed from the judgment of the superior court affirming the order of the department denying his application.

In the fourth case, John Moore was injured in 1937 while engaged in extrahazardous work in the employ of Northwest Door Company. His claim was closed March 7, 1939. His application filed in 1943 for reopening of the claim was rejected. An order was entered by the joint board denying his petition for rehearing. His appeal to the superior court from that order resulted in entry of a judgment reversing the order of the department and remanding the cause for reconsideration of application for reopening the claim on its merits. From that judgment the employer appealed.

The original workmen's compensation act (Laws of 1911, chapter 74, § 5 (h), p. 360) provided:

"If aggravation, diminution, or termination of disability takes place or be discovered after the rate of compensation shall have been established or compensation terminated in any case the department may, upon the application of the beneficiary or upon its own motion, readjust for future application the rate of compensation in accordance with the rules in this section provided for the same, or in a proper case terminate the payments."

It will be noted that the statute did not impose any limitation of time upon the right of a claimant to apply for a reopening of his claim on the ground of aggravation of his disability.

The foregoing was not changed until 1927. By laws of 1927, chapter 310, § 4(h), p. 844, the statute was amended to limit to three years the time within which a claimant might apply for a reopening of his claim on the ground of aggravation of disability. The amended statute reads as follows:

"If aggravation, diminution, or termination of disability takes place or be discovered after the rate of compensation shall have been established or compensation terminated, in any case the director of labor and industries, through and by means of the division of industrial insurance, may, upon the application of the beneficiary, made within three years after the establishment or termination of such compensation, or upon his own motion, readjust for further application the rate of compensation in accordance with the rules in this section provided for the same, or in a proper case terminate the payment: *Provided,* Any such applicant whose compensation has heretofore been established or terminated shall have three years from the taking effect of this act within which to apply for such readjustment."

The foregoing was reenacted without any change by Laws of 1929, chapter 132, § 2 (h), p. 338, and remained the same (Rem. Rev. Stat., § 7679 (h)) until Laws of 1941, chapter 209, p. 624, subsequently approved by the people as referendum measure No. 22, became effective December 3, 1942. The only changes made by referendum No. 22 in the aggravation provision of the 1927 statute, as reen-

acted in 1929, were to substitute the words "five years" for the words "three years" in the body of subsection (h) and to substitute the words "five (5) years" for the words "three years" in the proviso. The subdivision reads as follows:

"If aggravation, diminution, or termination of disability takes place or be discovered after the rate of compensation shall have been established or compensation terminated, in any case the Director of Labor and Industries, through and by means of the Division of Industrial Insurance, may, upon the application of the beneficiary, made within five years after the establishment or termination of such compensation, or upon his own motion, readjust for further application the rate of compensation in accordance with the rules in this section provided for the same, or in a proper case terminate the payment: *Provided,* Any such applicant whose compensation has heretofore been established or terminated shall have five (5) years from the taking effect of this act within which to apply for such readjustment."

In the Lane and Rowley cases, the superior court held that referendum No. 22 was not intended to apply retroactively, and therefore granted the employers' motions to dismiss the appeals of the claimants. In the Moore case, the court denied the employer's motion and entered judgment reversing the order of the department.

The employers contend:

"(1) That those who enacted Referendum No. 22 did not intend it should apply retroactively so as to allow reopening of claims barred by limitation of time when the Measure became effective, and that it therefore does not so apply; but (2) if it would so apply, then it is unconstitutional."

The employers concede that referendum No. 22 was intended to apply retroactively so as to extend the time for reopening all claims not barred on the effective date of the referendum measure.

It is the position of claimants that the meaning of the proviso that "Any such applicant whose compensation has heretofore been established or terminated shall have five (5) years from the taking effect of this act within which

to apply for such readjustment" is clear; hence, there is nothing to construe; that is, the legislature plainly intended that the five-year statute should apply retroactively so as to permit reopening of claims barred by three-year statute of limitations when amendatory five-year statute became effective.

It is argued that such retroactive application will not render the statute unconstitutional, as the method of reopening claims is a matter of practice, procedure, and remedy and does not affect any contractual or vested right of employer, employee, or the department of labor and industries. It is further insisted that the act is an exercise of the police power of the state and that the power of the state to impose such a license tax upon the industries in furtherance of the state's public policy in caring for workmen injured in industries, may not be successfully challenged.

All statutes must be interpreted before they can be applied; hence, all statutes are subject to construction; and, if there be more than one possible construction, that meaning will be adopted which most reasonably seems to be the one intended by the legislature. See Crawford, Statutory Construction, p. 283, § 175.

It must be presumed that the members of the legislature are familiar with the doctrine announced by this court in *Packscher v. Fuller,* 6 Wash. 534, 33 Pac. 875, and consistently followed by us for more than a half century, that, where a statute of limitations is amended by simply changing the period of limitation, the amendment extends the time for asserting existing claims, but does not revive barred claims.

We are committed to the rule that, if before the bar of a statute of limitations has become complete the statutory period of limitation is changed, the old law is not modified by a new, so as to give to both statutes a proportional effect; but the time passed is effaced and the new law governs. In other words, the period provided by the new law runs upon all existing claims in order to constitute a bar. The statute in force at the time the action is brought controls,

unless the time limited by the old statute for commencing an action has elapsed while the old statute was in force and before the suit is brought, in which case the suit is barred and no subsequent statute can renew the right or take away the bar. Wood on Limitations (4th ed.) Vol. 1, p. 59, § 12; *Packscher v. Fuller,* 6 Wash. 534, 33 Pac. 875; *Moore v. Brownfield,* 7 Wash. 23, 34 Pac. 199; *Seattle v. DeWolfe,* 17 Wash. 349, 45 Pac. 553; *Earle v. Froedtert Grain & Malting Co.,* 197 Wash. 341, 85 P. (2d) 264; and *Peeples v. Hayes,* 4 Wn. (2d) 253, 104 P. (2d) 305.

"A repeal of the statute of limitations by the legislature, and the enactment of a new statute, have the effect of renewing actions that have not expired before the new statute takes effect; but a statute of limitations which repeals or amends a former statute on the same subject does not revive an action which has been barred by the former statute. It is not retroactive, so as to remove the bar of limitations from a claim already barred at the time the act took effect." Wood on Limitations (4th ed.), Vol. 1, p. 74, § 12b.

The question presented for our determination is whether the facts of the cases at bar fall within the five-year statute. True, in applying the statute, our decision depends upon the intent of the legislature—whether it intended to include or exclude claims barred by the three-year statute of limitations when the five-year statute of limitations became effective.

The problem of distinguishing between ascertaining the legislative intent and applying the statute should not unduly confuse us. The first consists in discovering what the legislature meant. The second is the determination of whether the facts of a given case are within or without the legislative meaning previously ascertained.

The meaning of the old Bolognian statute which provided that whoever drew blood in the streets should be severely punished was certainly clear upon its face. Could it apply to the case of a barber who opened a vein of a patient in the street?

"In 1 Blackstone's Commentaries, 91, the learned author, speaking of the construction of statutes, says: 'If there

arise out of them any absurd consequences manifestly contradictory to common reason, they are, with regard to those collateral consequences, void. . . . When some collateral matter arises out of the general words, and happen to be unreasonable, then the judges are, in decency, to conclude that the consequence was not foreseen by the Parliament, and, therefore, they are at liberty to expound the statute by equity, and only *quoad hoc* disregard it;' and he gives as an illustration, if an Act of Parliament gives a man power to try all causes that arise within his Manor of Dale, yet, if a cause should arise in which he himself is party, the Act is construed not to extend to that because it is unreasonable that any man should determine his own quarrel.

"There was a statute in Bologna that whoever drew blood in the streets should be severely punished, and yet it was held not to apply to the case of a barber who opened a vein in the street. It is commanded in the Decalogue that no work shall be done upon the Sabbath, and yet giving the command a rational interpretation founded upon its design, the Infallible Judge held that it did not prohibit works of necessity, charity or benevolence on that day." *Riggs v. Palmer*, 115 N. Y. 506, 22 N. E. 188, 12 Am. St. 819, 5 L. R. A. 340.

The construction for which claimants contend is contrary to reason and could not be attributed to lawmakers in their right senses. That it must be presumed that the legislature, when it enacted the five-year limitation statute, was aware of the rule that a legislative attempt to revive a statutory right once expired is unconstitutional, needs no citation of sustaining authority. The imputation implicit in claimants' position is that our lawmakers were ignorant of the rule. What could be more unreasonable than to suppose that it was the legislative intention knowingly to pass an invalid act? No such purpose may be ascribed to the lawmakers.

The argument that plainly the legislature intended—and that it did not thereby exceed its powers—that the provisions of the statute should apply retroactively, so as to allow reopening of claims barred by limitation of time when referendum No. 22 (Laws of 1941, chapter 209) changed the limitation period in which to apply for a

reopening of claims from three to five years, is not sound. It is insisted that, as the act is remedial only, and since it is a valid exercise of the police power, it is not violative of the constitutional provisions relating to due process and the equal protection of the laws.

We are aware of the doctrine that, as a general rule, legislation which relates alone to procedure or to legal remedies will not be subject to the rule that statutes should not be given a retroactive operation. It should be borne in mind, however, that, if a statute which relates to procedure or to legal remedy interferes with vested rights, it will be subject to the general rule against retroactive operation. A cause of action once barred by a statute of limitations cannot be revived, or the right of defense to an action when once acquired cannot be affected by a subsequent amendment or repeal of a statute, and the right to set up the bar of such a statute is a vested right which cannot be taken away by legislation, as it would be deprivation of property without due process of law. Crawford, Statutory Construction, § 285.

We cannot too strongly stress that all rights of injured workmen under the workmen's compensation act, which is in derogation of the common law, are statutory. Rem. Rev. Stat., § 7673 [P. C. § 3468]. If a statutory right has once expired, the legislature cannot revive that right. *Danzer & Co. v. Gulf & S. I. R. Co.*, 268 U. S. 633, 69 L. Ed. 1126, 45 S. Ct. 612.

We find no respectable authority for the position that a time limitation prescribed in the statute upon the right created by the same statute, is merely a matter of remedy and not of substance. The three-year statute created a right and prescribed a period of time in which to assert that right. Compliance with the limitation of time prescribed constituted a condition precedent to the enjoyment of the right. It is not material whether the limitation is considered as going to the claimants' right or to the claimants' remedy. The statutory right created expired upon failure to assert the same within the statutory period prescribed. Until Laws of 1941, chapter 209, became effective,

the lapse of three years after the closing of a claim barred a subsequent application for reopening of the claim on the ground of aggravation of injury. *Hunter v. Department of Labor and Industries,* 190 Wash. 380, 68 P. (2d) 224.

In holding that statutes of limitation which relate merely to the remedy do not give vested rights, and that the limitation provided for in the act simply defeats the remedy, the court said, in *Fannin County v. Renshaw,* 29 S. W. (2d) (Tex. Civ. App.), 476, 478:

"There is an essential distinction between a statute simply limiting the remedy and a statute which not only bars the remedy but also extinguishes the right to the thing or property in question. In the one case the right is extinguished, while in the other the right still exists but the remedy therefor is taken away."

The author's observation in note to § 285, Crawford, Statutory Construction, that from a practical standpoint there is no real difference whether the right is extinguished or the remedy for the enforcement of the right is barred, is apt.

In *Mattson v. Department of Labor and Industries,* 176 Wash. 345, 29 P. (2d) 675, we held that, an injured workman's rights under the workmen's compensation act being purely remedial, no vested rights were affected by Laws of 1927, chapter 310, which limited to three years the period in which the workman could apply for readjustment of compensation established or terminated prior to the enactment of said limitation, despite the fact that Laws of 1923, chapter 136, in which there was no time limitation within which to apply for readjustment, was repealed by Laws of 1927, chapter 310.

True, the legislature, without violation of the guaranties of due process of law, may extend the period of limitations and may make such extension applicable to causes of action which have already accrued. See 12 C. J. 1224. The legislature may also reduce the period and make such reduction applicable to existing causes of action, subject, however, to the conditions that it may not entirely take away a right to sue nor so unreasonably shorten the period as

practically to take away all remedy. We do not agree that a time limitation prescribed in the statute upon the right created by the same statute is merely a matter of remedy and not of substance. Nor do we agree that the legislature can remove a statutory bar to a cause of action that has already become complete.

In *Mattson v. Department of Labor and Industries, supra,* as in *State ex rel. Berwind Fuel Co. v. District Court,* 138 Minn. 213, 164 N. W. 812, it was unsuccessfully contended that, when an act fixed no limitation upon the time within which a workman could recover under the workmen's compensation act (during the life of which the workman sustained an injury), a subsequent act limiting the time to recover under the workmen's compensation act, did not apply to claims that accrued prior to the enactment of the second law.

In *Davis & McMillan v. Industrial Accident Commission,* 198 Cal. 631, 246 Pac. 1046, 46 A. L. R. 1095, the supreme court of California held that the *legislature may extend* the *time for filing claims* under the workmen's compensation act *before* the *time fixed has expired,* as there is no vested right in the running of the statute of limitations until it has completely run and barred the action.

In *Mattson v. Department of Labor and Industries,* 176 Wash. 345, 29 P. (2d) 675, 293 U. S. 151, 79 L. Ed. 251, 55 S. Ct. 14, the United States supreme court held that the 1927 amendment of the compulsory workmen's compensation act of this state, limiting the time to three years within which a claim could be reopened for the readjustment of compensation on account of aggravation of the disability, did not deny due process of law to one who sustained compensable injuries while a preexisting statute was in effect, though the preexisting statute contained no limitation as to the time within which such right might be asserted.

We find no comfort in *Mattson v. Department of Labor and Industries, supra,* for claimants. It is not authority for their contention that a legislative attempt to revive a statutory right once expired is constitutional. See 16 C. J. S. 685.

In *Decker v. Pouvailsmith Corp.*, 252 N. Y. 1, 168 N. E. 442, an infant under fifteen years of age was injured in the course of hazardous employment. Notice of injury was promptly given in his behalf, but no claim for compensation was filed within a year after the accident; hence, the right to claim compensation was barred, in the absence of some exception thereto by the statute which provides that the right to claim compensation shall be barred unless within one year after the accident a claim for compensation shall be filed with the commissioner of the department of workmen's compensation. A guardian *ad litem* was appointed, who instituted an action for the infant against the employer to recover damages under the provisions of a statute which it was claimed gave a right of action for breach of statutory duty in employing a child under sixteen years of age. A judgment recovered in the action was reversed on the ground that the workmen's compensation law provided an exclusive remedy. A year later, but nearly five years after the injury, the father of the infant presented a formal claim for compensation in behalf of claimant. The only question presented was whether the claim was barred by the statute of limitations.

At the time of the accident, the workmen's compensation statute provided that no limitation of time would run as against any person who was mentally incompetent or a minor dependent so long as he had no committee or guardian or next friend. The court held that the parent of the child, as guardian of the person, was the proper person to file the claim for compensation, and that the bar of the statute prevailed when the parent neglected to file the claim for compensation within one year after the accident, as provided by the statute.

In 1922 (this was after the statute of limitations had run against the claimant), the legislature materially amended (see New York Laws of 1922, chapter 615) and renumbered § 116 of the workmen's compensation act. The new section (§ 115) reads:

"No limitation of time provided in this chapter shall run as against any person who is mentally incompetent or a minor so long as he has no committee or guardian."

In the court's opinion is the statement that the purpose of the legislature was clear and that all minors were brought within the protection of the statute; that "guardian" as used in the statute might reasonably be construed as meaning a guardian appointed by the court and charged with the duty of protecting the property interest of his ward.

"Such is the meaning of the word as used in Workmen's Compensation Law, section 16, subdivision 2, providing that the board may in its discretion require the appointment of a guardian for the purpose of receiving the compensation of a minor child."

The court further stated that such a statute might be made retroactive without impairing any constitutional rights of the employees, but that the legislature had not indicated that the amended act should apply to cases where the statute had already run; hence,

"The court may not give a retroactive effect to a statute to revive claims already barred under the old section unless the legislative purpose is defined by express language or by necessary inference."

Laws of 1927, chapter 709, of the laws of New York was enacted for the relief of claimant Decker and was intended to revive his claim. The statute authorized Decker to file a claim for compensation under the workmen's compensation law for injuries sustained in 1919, notwithstanding the failure to file his claim within the time prescribed by the workmen's compensation statute. The court held that the foregoing act for the relief of claimant Decker denied to the employer equal protection of the laws by singling out one of a class for special burdens and obligations, and that one person should not be subjected to liability from which all others in like circumstances are exempted.

In *Peeples v. Hayes,* 4 Wn. (2d) 253, 104 P. (2d) 305, a debtor gave alleged preference in 1930 and again in 1933. In 1937, a receiver was appointed who brought suit in 1938 in compliance with the statute which required that such suit must be instituted within six months from the date of the application for his appointment. The trial court held that the action was barred by statute of limitations prior to

the date of the appointment of the receiver, who insisted that the statute (Rem. Rev. Stat., § 5831-1 [P. C. § 4532-1]), which provided for suit to be commenced within six months after the application for appointment of receiver, was exclusive, and permitted the action.

We affirmed the judgment, agreeing with the trial court that while the statute under which the receiver was appointed created both the right and a bar to its enforcement, yet that statute did not have the effect of reviving a cause of action which had already been barred by a statute of limitations; that is, the statute did not create a new cause of action in the receiver but merely authorized him to assert any claim which was in existence at the time of his appointment.

By Laws of 1923, chapter 28, p. 70, the legislature plainly expressed in the following language an intention to revive a claim barred by ordinary general statute of limitations:

"LIMITATION OF ACTIONS.

"AN ACT relating to limitation of actions and the accrual thereof and applying to actions now barred as well as those not barred, and amending section 159 of Remington's Compiled Statutes. . . .

"An action upon a statute for penalty or forfeiture, where an action is given to the party aggrieved, or to such party and the state, except when the statute imposing it prescribed a different limitation: *Provided, however,* The cause of action for such penalty or forfeiture, whether for acts heretofore or hereafter done, and regardless of lapse of time or existing statutes of limitation, or the bar thereof, even though complete, . . . and such liability, whether for acts heretofore or hereafter done, and regardless of lapse of time or existing statutes of limitation, or the bar thereof, even though complete, shall exist and be enforcible. . . ."

In *Herr v. Schwager,* 145 Wash. 101, 258 Pac. 1039, cited by claimants in the cases at bar in support of their position, we held that the foregoing statute of limitations as to certain actions after the limitation had run operated on the remedy only and did not affect any vested right. We followed *Campbell v. Holt,* 115 U. S. 620, 29 L. Ed. 483, 6 S. Ct. 209, for the reason that the liability of defendants for di-

verting the assets of an insolvent corporation to the prejudice of the rights of a creditor of the corporation existed at the common law.

*Danzer & Co. v. Gulf & S. I. R. Co.,* 268 U. S. 633, 69 L. Ed. 1126, 45 S. Ct. 612, is decisive of the question in the cases at bar and distinguishes *Campbell v. Holt, supra,* which, like *Herr v. Schwager, supra,* involved a common-law cause of action and ordinary statute of limitations.

In *Campbell v. Holt, supra,* the legislature of the state of Texas repealed an ordinary statute of limitations, under which the plaintiff's remedy at common law on contract had been barred. It was held by a divided United States supreme court that the removal of the bar and entry of judgment against defendants did not deprive them of their property without due process of law. There is no distinction in principle between *Campbell v. Holt, supra,* which has been repudiated by a majority of appellate courts, and *Herr v. Schwager, supra.*

In *Danzer & Co. v. Gulf & S. I. R. Co.,.supra,* the interstate commerce act created a right against a railroad in favor of one who was damaged by the railroad's misrouting of a shipment. The act provided that all complaints for recovery of damages should be filed within two years from the time the cause of action accrued and not afterward. The United States supreme court held that the right of a shipper to an award of damages resulting from misrouting of his goods by a carrier was both created and limited by the interstate commerce act; therefore, the lapse of time not only barred the remedy but also destroyed the liability of defendant to plaintiff. The right in that case, as in the cases at bar, was a statutory right which had expired; therefore, the legislative branch of government could not revive that right. The court said:

"We need not re-examine the doctrine of *Campbell v. Holt,* 115 U. S. 620, as it is plain that case does not apply. That was an action on a contract for the recovery of money. By a state statute of limitations, the right of action had been barred. The statute was repealed before the action was commenced. It was held that the action could be maintained and that such repeal did not deprive the debtor of

his property without due process of law in violation of the Fourteenth Amendment. The decision rests on the conception that the obligation of the debtor to pay was not destroyed by lapse of time, and that the statute of limitations related to the remedy only, and that the removal of the bar was not unconstitutional. The opinion distinguishes the case from suits to recover real and personal property. That case belonged to the class where statutory provisions fixing the time within which suits must be brought to enforce an existing cause of action are held to apply to the remedy only. But such provisions sometimes constitute a part of the definition of a cause of action created by the same or another provision, and operate as a limitation upon liability."

*Herr v. Schwager, supra,* and *Campbell v. Holt, supra,* upon which claimants rely, are not in point; hence, it is not material to the cases at bar whether they were correctly decided.

In *Bussey v. Bishop,* 169 Ga. 251, 150 S. E. 78, 67 A. L. R. 287, in affirming a judgment which set aside an award in favor of claimant in a proceeding under the workmen's compensation statute, the court held, under one of the provisions of the constitution of that state, that no retroactive law shall be passed, that the legislature cannot revive a right of action which was barred by the statute of limitations in existence prior to the passage of the reviving act. Particularly pertinent is the following language of the opinion:

"Most of the decisions which hold contrary to the ruling that the legislature can not revive a cause of action barred by the statute of limitations are based upon the ruling made in *Campbell v. Holt, supra,* in which a distinction was made between a statutory bar operating to invest persons with title to property, and a bar which constitutes merely a defense to a personal demand. Mr. Justice Miller, who delivered the opinion of the majority in that case gave the following reason for such distinction: 'We understand very well what is meant by a vested right to real estate, to personal property, or to incorporeal hereditaments. But when we get beyond this, although vested rights may exist, they are better described by some more exact term, as the phrase itself is not one found in the language of the constitution. We certainly do not understand that a right to defeat a just debt by the statute of limitation is a vested right, so as to

be beyond legislative power in a proper case.' The reply to this contention by Mr. Justice Bradley, who dissented, and with whom Mr. Justice Harlan concurred, seems to be unanswerable. In his dissent Justice Bradley said: 'Now, an exemption from a demand, or an immunity from prosecution in a suit, is as valuable to the one party as the right to the demand or to prosecute the suit is to the other. The two things are correlative; and to say that the one is protected by constitutional guaranties, and that the other is not, seems to me almost an absurdity. One right is as valuable as the other. My property is as much imperiled by an action against me for money as it is by an action against me for my land or my goods. It may involve and sweep away all that I have in the world. Is not a right of defense to such an action of the greatest value to me? If it is not property in the sense of the constitution, then we need another amendment to that instrument. But it seems to me that there can hardly be a doubt that it is property. The immunity from suit which arises by operation of the statute of limitations is as valuable a right as the right to bring the suit itself. It is a right founded upon a wise and just policy. Statutes of limitation are not only calculated for the repose and peace of society, but to provide against the evils that arise from loss of evidence and the failing memory of witnesses. It is true that a man may plead the statute when he justly owes the debt for which he is sued; and this has led the courts to adopt strict rules of pleading and proof to be observed when the defense of the statute is interposed. But it is, nevertheless, a right given by a just and politic law, and, when vested, is as much to be protected as any other right that a man has. The fact that this defense pertains to the remedy does not alter the case. Remedies are the life of rights, and are equally protected by the constitution. Deprivation of a remedy is equivalent to a deprivation of the right which it is intended to vindicate, unless another remedy exists or is substituted for that which is taken away. This court has frequently held that to deprive a man of a remedy for enforcing a contract is itself a mode of impairing the validity of the contract. And, as before said, the right of defense is just as valuable as the right of action. It is the defendant's remedy. There is really no difference between the one right and the other in this respect.'

"We can see no valid reason why a claim which is barred by the statute of limitations can be revived and restored by an act of the legislature in the same jurisdiction. This is especially true, as we have shown, where the statute creat-

ing the claim distinctly provides that the claim shall be forever barred if not filed with a given tribunal within the period of limitation named in the statute. The requirement that the claim for compensation shall be filed with the Industrial Commission within one year after the accident is an essential ingredient, and the right ceases and terminates where no action is so commenced at the expiration of that time. Where a statute gives a new right of action not existing at common law, and prescribes the time within which it may be enforced, the time so prescribed is a condition to its enforcement, an element in the right itself, and the right fails with the failure to apply for relief within the allotted time."

See *Krause v. Rarity*, 210 Cal. 644, 293 Pac. 62, 77 A. L. R. 1327, and annotations 36 A. L. R. 1316 *et seq.*, on the question of the power of legislature to revive a right of action barred by limitation. See 34 Am. Jur. pp. 33-39, §§ 27-35, on the subjects of modification or repeal of statute of limitation, enlarging a statutory period, suspension of operation of statute, retrospective statutes, and power of legislature to revive an action which has become barred by statute of limitation.

Claimants insist that, as the statute in question is an exercise of the police power of the state, it is not violative of constitutional provisions relating to due process and the equal protection of the laws. If an enactment is a valid exercise of the police power, it, as stated in Sutherland, Statutory Construction (3d ed.), vol. 2, § 2203, "does not lack due process, nor are contractural obligations violated."

While the police power is an attribute of sovereignty which exists without express declaration, a limitation upon it is that it must not violate any direct or positive mandate of the constitution. *Shea v. Olson*, 185 Wash. 143, 186 Wash. 700, 53 P. (2d) 615, 59 P. (2d) 1183, 111 A. L. R. 998.

The police power is not a universal solvent by which all constitutional guaranties and limitations can be loosened and set aside, regardless of their clear and plain meaning, nor is it a substitute for those guaranties. The exercise of the police power is limited in that it may not unreasonably limit rights guaranteed by the Federal and state constitu-

tions. The constitutional guaranty of the right of property protects it from unjustifiable impairment or abridgment by legislative edicts.

"While it is difficult if not impossible to define precisely the limits of the police power, there must in the very nature of things be some limit to it, for otherwise the guaranties of written constitutions would be little more than mere precatory and directory suggestions without force or life, affording to the citizen only a false and illusory protection against the invasion of his rights by the State, and his security would depend not upon constitutional guaranties but upon the will of the State in exercising an unlimited police power." *Goldman v. Crowther,* 147 Md. 282, 128 Atl. 50, 38 A. L. R. 1455.

The workmen's compensation act, as stated above, is in derogation of the common law and all rights of injured workmen thereunder are statutory. Rem. Rev. Stat., § 7673. The amount allowed under the act upon a claim is charged to the employer's cost experience, as provided by the statute, and the claim is ultimately paid, to a large extent, by such employer through those resultant increased premiums, Rem. Rev. Stat., § 7676 [P. C. § 3471]; *Mud Bay Logging Co. v. Department of Labor and Industries,* 189 Wash. 285, 64 P. (2d) 1054, 193 Wash. 275, 75 P. (2d) 579. See, also, *St. Paul & Tacoma Lbr. Co. v. Department of Labor and Industries,* 19 Wn. (2d) 639, 144 P. (2d) 250.

*State v. Vinther,* 176 Wash. 391, 29 P. (2d) 693; *State ex rel. Davis-Smith Co. v. Clausen,* 65 Wash. 156, 117 Pac. 1101, 37 L. R. A. (N. S.) 466; and *State v. Mountain Timber Co.,* 75 Wash. 581, 135 Pac. 645, 243 U. S. 219, 61 L. Ed. 685, 37 S. Ct. 260, are cited in support of the argument that the fund out of which the claims of workmen are paid are license taxes exacted of employers for the privilege of engaging in industries; therefore, the legislature may, and it has, constitutionally removed the bar of the three-year statute of limitations by enactment of the five-year statute.

All that we held in *State v. Vinther, supra,* was that the state, in suing for the benefit of the accident fund, under one of the provisions of the workmen's compensation act, on an assigned claim for the death of a workman, acted in

its sovereign capacity, and not for the benefit of private individuals; therefore, the statute of limitations could not run against the sovereign state. It is true that, in the course of our opinion, we indulged in gratuitous observations concerning the character of the accident fund, but that language was not necessary to our decision and should not have appeared in the opinion. The same criticism may be justly leveled at our opinions in *State ex rel. Davis-Smith Co. v. Clausen, supra,* and *State v. Mountain Timber Co. supra.* A careful examination of the three cases cited will convince an understanding reader that the basis of the decision in each of the three cases was not that stated by claimants in the cases at bar.

The contributions paid by the various employers into the accident fund are not license taxes exacted of employers for the mere privilege of engaging in business. The contributing employers have such a vested right or interest in the fund created by their contributions as to entitle them to an appeal to the courts from the department's award to a claimant. The employer has such a material interest in that fund that reviewing courts, although appealing employer may not supersede the department's award, will suspend the operation of the department's order making the award pending disposition of that appeal from the order to the superior court and from the judgment of the superior court to this court. See *Mud Bay Logging Co. v. Department of Labor and Industries, supra,* in which we held in a seven to two *En Banc* decision that the contributions paid by the various employers into the accident fund were not taxes exacted from employers for the privilege of engaging in business. In *State ex rel. Crabb v. Olinger,* 196 Wash. 308, 82 P. (2d) 865, we refused to recede from that position, and in *St. Paul & Tacoma Lbr. Co. v. Department of Labor and Industries,* 19 Wn. (2d) 639, 144 P. (2d) 250, we again stressed our prior holdings that an employer contributing to the accident fund has a material interest in that fund, a vested right therein of which he may not be deprived without due process of law.

In *Danzer & Co. v. Gulf & S. I. R. Co., supra,* the United States supreme court held that a legislative attempt to revive a statutory right, such as is involved in the cases at bar, once expired, is unconstitutional. There is no respectable authority contrary to that decision.

The warning voiced in dissenting opinion of the late Chief Justice Chadwick in *Kuehl v. Edmonds,* 91 Wash. 195, 157 Pac. 850, is as challenging, and the language employed as apt in these parlous days, as when uttered in 1916. In pleading for stability, a government of laws and not of men, that great jurist said:

"It [the majority opinion] will encourage those who, in these times of shifting sentiment, say that some courts never make a precedent and never follow one."

The question presented is whether a cause of action (logically, there is no difference whether the right is extinguished or the remedy for the enforcement of the right is barred) once barred by a statute of limitations can be revived or the right of defense to an action when once acquired can be affected by a subsequent amendment or repeal of the limitation statute.

I am still of the view that the right to set up the bar of such a statute is a vested right which cannot be taken away by legislation, as it would be deprivation of property without due process of law. The majority opinion invades the right of the employer to whom this court has given the right of appeal in this class of cases. Only by reason of his interest in the fund may the employer be granted the right of appeal.

There is no respectable authority contrary to *Danzer & Co. v. Gulf & S. I. R. Co., supra,* in which the United States supreme court held that a legislative attempt to revive a statutory right, such as is involved in the case at bar, once expired, is unconstitutional.

The *raison d'etre* for the present indefensible position of the majority may be, as argued by one of the members of this court, "The human element," (change of judicial personnel) and probably the desire of that new personnel to favor, "in view of the social aspects [the Lorelei to which

we have too long listened and which is luring the ship of state onto the reefs] of the entire legislation," one class over another. To that program of inequality and legal instability, I cannot subscribe.

The judgments in the Lane and Rowley cases should be affirmed. The judgment in the Moore case should be reversed.

October 4, 1944. Petition for rehearing denied.

[1]Reported in 151 P. (2d) 433.