[Nos. 50944–1, 51280–9. En Banc. November 21, 1985.]

KENNETH D. STENBERG, ET AL, *Appellants,* v. PACIFIC POWER & LIGHT CO., INC., *Defendant,* YAKIMA COUNTY, *Respondent.*

SHEILA SCHRODER, *Petitioner,* v. THE COUNTY OF KLICKITAT, *Respondent.*

*Velikanje, Moore & Shore, Inc., P.S.,* by *James P. Hutton,* for appellants.

*Kargianis & Austin,* by *George Kargianis* and *Mark E. Fortier,* for petitioner.

*Jeffrey C. Sullivan, Prosecuting Attorney,* and *Ron Zirkle, Deputy,* for respondent Yakima County.

*Walter G. Meyer, Jr.,* and *David A. Thompson* (of *Halverson & Applegate, P.S.*), for respondent Klickitat County.

*Bryan P. Harnetiaux* and *Robert H. Whaley* on behalf of Washington Trial Lawyers Association, amici curiae for appellants.

DOLLIVER, C.J.—Both plaintiffs, in a consolidated appeal, challenge a trial court's dismissal or partial dismissal of their cases by summary judgment pursuant to RCW 4.16.130, the 2–year "catchall" statute of limitation. The plaintiffs claim the 3–year statute of limitation, RCW 4.16-.080(2), governs their cases, which involve an "injury to the person".

We hold RCW 4.16.080(2) applies to causes of action claiming both direct and indirect injuries to the person or rights of another and overrule the direct/indirect injury distinction promulgated in the case of *Northern Grain & Warehouse Co. v. Holst,* 95 Wash. 312, 163 P. 775 (1917) and its progeny.

## I

Kenneth Stenberg was rendered quadriplegic as a result of an automobile collision on October 30, 1980. Stenberg, the favored driver, entered the intersection of Scoon Road and Independence Road in Yakima County. Dennis Hysell failed to yield the right of way and, as a result, the two cars collided. The Stenberg vehicle then struck an electrical power pole erected by Yakima County and maintained by Pacific Power and Light Co., Inc. Apparently, it was a collision with the power pole that caused the fractures to Stenberg's spinal column which resulted in paralysis.

The Stenbergs settled with Hysell. On December 27, 1982, more than 2 but less than 3 years after the accident, the plaintiffs initiated the instant action against Pacific Power and Yakima County. Relying on *Steele v. Bell,* 37 Wn. App. 337, 679 P.2d 964 (1984), the trial court granted the defendants' motions for summary judgment on the ground that the action should have been commenced within 2 years of the accident, since any harm caused by the electrical pole was an indirect cause of harm.

The plaintiffs filed a notice of appeal for direct review on September 5, 1984. They subsequently settled with Pacific Power leaving Yakima County as the sole defendant. In a case earlier consolidated with Stenberg (Cienfuegos, et al v. Mike's Rental Machinery, Inc.), those parties settled subsequent to the direct appeal and are not before this court.

Plaintiff Schroder was seriously injured as a passenger in a single car accident in Klickitat County on the evening of November 15, 1978. The accident occurred on county road number 9234, at the foot of an incline where the road curves sharply to the right. The driver of the car saw the upcoming curve as an extension of the roadway going straight ahead. The centerline ended abruptly; and there were no guardrails above the embankment on the outside of the curve. Traveling at the speed limit, the car left the roadway, nose–diving off the embankment into a diagonal–end flip, and came to rest on its wheels.

Schroder initiated a negligence action against Klickitat

County on October 5, 1981, more than 2 years, but less than 3 years from the accident, listing the following eight claims or theories of negligence: (1) failure to provide or maintain a suitable shoulder at the edge of the road; (2) failure to provide and maintain a road of safe and adequate width; (3) failure to provide and maintain a guardrail; (4) failure to remove obstruction from the edge of the road; (5) failure to sign the road properly or maintain the surface of the road; (6) failure to design properly the roadway at the scene of the accident; (7) failure to mark the edge of the roadway; and (8) failure to keep the roadway clear of gravel. The trial court accepted the County's motion to dismiss in part, and barred the first four claims pursuant to *Steele v. Bell, supra,* as indirect causes and subject to the 2–year catchall statute of limitation. The trial court permitted the other four claims to remain pending.

Schroder filed notice for discretionary review from the order granting in part defendant's motion to dismiss this action against it. We granted the motion for discretionary review and consolidated the case with the Stenberg case.

The sole issue before this court is whether the 2–year or the 3–year statute of limitation applies to a claim against a tortfeasor who is only an "indirect" cause of the harm.

## II

RCW 4.16.080(2) requires "[a]n action for taking, detaining, or injuring personal property, including an action for the specific recovery thereof, or for any other injury to the person or rights of another not hereinafter enumerated . . ." shall be commenced within 3 years after the cause of action shall have accrued. RCW 4.16.130, the so–called "catchall" provision provides that "[a]n action for relief not hereinbefore provided for, shall be commenced within two years after the cause of action shall have accrued."

These two statutes have undergone no substantive changes in language since their adoption in 1854. *See* Laws of 1854, p. 363, § 4; Laws of 1854, p. 364, § 7. To put the use and application of the statutes in perspective, we need

to look to the purposes and policies of statutes of limitation.

■ The Limitation Act, 1623, 21 Jac. 1, ch. 16 (7 Chitty's Eng. Stats., at 619 (6th ed. 1912)) marked the beginning of the modern law of limitations on personal actions in the common law. The purposes behind the act were to keep out inconsequential claims and to minimize hardships on poor defendants. *Developments in the Law— Statute of Limitation,* 63 Harv. L. Rev. 1177 (1950).

Today, all states have limitation statutes for the majority of actions before their courts. The purposes have remained intact; courts apply limitation statutes to compel the exercise of a right of action within a reasonable time so opposing parties have fair opportunity to defend. 51 Am. Jur. 2d *Limitation of Actions* § 17 (1970).

> Statutes of limitation are in their nature arbitrary. They rest upon no other foundation than the judgment of a State as to what will promote the interests of its citizens. Each determines such limits and imposes such restraints as it thinks proper.

*Tioga R.R. v. Blossburg & C. R.R.,* 87 U.S. (20 Wall.) 137, 150, 22 L. Ed. 331 (1873) (Hunt, J., concurring).

In Washington, the goals of our limitation statutes are to force claims to be litigated while pertinent evidence is still available and while witnesses retain clear impressions of the occurrence. *Summerrise v. Stephens,* 75 Wn.2d 808, 811, 454 P.2d 224 (1969). Our policy is one of repose; the goals are to eliminate the fears and burdens of threatened litigation and to protect a defendant against stale claims. *Ruth v. Dight,* 75 Wn.2d 660, 664, 453 P.2d 631 (1969). A statute of limitation, in effect, deprives a plaintiff of the opportunity to invoke the power of the courts in support of an otherwise valid claim.

However, in applying a limitation statute, this court has insisted on a careful scrutiny of the changing conditions and needs of the times to prevent any application of the common law as an instrument of injustice. *Lundgren v. Whitney's Inc.,* 94 Wn.2d 91, 95, 614 P.2d 1272 (1980).

When there is uncertainty as to which statute of limitation governs, the longer statute will be applied. *Rose v. Rinaldi,* 654 F.2d 546 (9th Cir. 1981); *Shew v. Coon Bay Loafers, Inc.,* 76 Wn.2d 40, 51, 455 P.2d 359 (1969).

To determine whether recent applications of the *Northern Grain* "direct/indirect" analysis have departed from the statutory language or the goals of our limitation statutes, it is necessary to make a chronological survey of Washington case law in this area. In 1901, this court interpreted the limitation statutes as an attempt to provide a limitation for every kind of action that could be brought in the courts, with the catchall provision (now RCW 4.16.130) intended to cover any action which did not fall into any of the other provisions. *Citizens' Nat'l Bank v. Lucas,* 26 Wash. 417, 418, 67 P. 252 (1901). A case decided later that same year found the catchall provision had no relation to actions for "an 'injury to the person or rights of another,' [now RCW 4.16.080(2)] for that was a matter before provided for." *Robinson v. Baltimore & Seattle Mining & Reduction Co.,* 26 Wash. 484, 487, 67 P. 274 (1901).

After *Robinson,* there were three cases decided between 1904 and 1909 which provided a direct/indirect distinction in the court's interpretation of the 3–year statute (now RCW 4.16.080(1)) as it related to "an action for waste or trespass upon real property." *Welch v. Seattle & M. R.R.,* 56 Wash. 97, 98, 105 P. 166 (1909); *Denney v. Everett,* 46 Wash. 342, 89 P. 934 (1907); *Suter v. Wenatchee Water Power Co.,* 35 Wash. 1, 76 P. 298 (1904). These cases held the 3–year statute governed trespass actions only when the trespass was a direct physical invasion of the property itself and not for an action for consequential damages. Thus, in all instances the 2–year catchall limitation was applied.

In *Welch v. Seattle & M. R.R.,* the plaintiffs sought to recover damages resulting from tunneling underneath the property of their building. The railroad argued the action was barred by the 2–year statute of limitation. The court responded:

An action setting forth such facts as these was an action in trespass, as distinguished from what was designated an action on the case, where the injury resulting from the action was not caused by direct force, but was consequential or an injury resulting indirectly from the act complained of. Mr. Blackstone, on *page 123 of Book 3 (Lewis's ed.), makes a distinction as follows:

"And it is a settled distinction, that where an act is done which is in itself an *immediate* injury to another's person or property, there the remedy is usually by an action of trespass *vi et armis*; but where there is no act done, but only a culpable omission, or where the act is not immediately injurious, but only by *consequence* and collaterally, there no action of trespass *vi et armis* will lie, but an action on the special case, as the damages consequent on such omission or act."

*Welch,* at 99–100.

Since consequential damages did not lead to an action for trespass, the court applied the catchall provision to provide a 2–year limitation. This cleared the way for the seminal case of *Northern Grain.* In that case, state officials failed to exact from a grain merchant the surety bond required in conjunction with issuance of a state license. When the plaintiff demanded its grain from the warehouse, none was available and, because of the official's omission, no bond was available to redress plaintiff's injuries. The court applied the 2–year catchall provision, reasoning that the 3–year provision for injuries to the "rights of another" must be construed narrowly or it would incorporate all causes of action, thus rendering the 2–year catchall provision useless. *Northern Grain,* at 315. To achieve this, the court established a direct/indirect distinction between causes of action:

[W]e must read subd. 2 [the predecessor to RCW 4.16-.080(2)] as applying only to certain direct invasions of personal or property rights not otherwise "hereinafter enumerated," and as not including those numerous causes of action recognized by the law, among which must be included the one here pleaded, if existing at all, where the law imposes a liability because of indirection or default. The cause of action here pleaded is indirectly based upon the failure of public officials to perform

duties imposed by law. It is not based upon any direct act of these officials injuring appellant's personal property or property rights. Nor, as we shall hereafter see, is it directly based upon the failure to perform a legal duty.

*Northern Grain,* at 315.

No other reason was offered for making this direct/indirect distinction nor was a reference made to the trespass distinctions set out in the preceding cases which held the catchall provision to govern trespass "on the case" actions. The court seemed to direct the distinction to invasion of personal or property *rights* and not to a physical injury to the person. *Northern Grain,* at 316. In arguing the construction and interpretation of the present RCW 4.16-.080(2), the prevailing party in *Northern Grain* stated in its brief:

> The word "rights" in this subdivision must be limited by the context in which it is used. . . . In no case where the exact meaning of this subdivision has been necessarily involved and actually decided has it ever been held that it relates to any actions except those concerning personal property and personal injuries.

Brief of Respondent S. Wilson, et al, at 41.

In a case decided the year following *Northern Grain,* the City of Seattle had erected a garbage incinerator on a lot adjoining the plaintiffs' lot. *Jacobs v. Seattle,* 100 Wash. 524, 171 P. 662 (1918). Even though the action was for "indirect" damage, the court in its reasoning made an eminent domain/contract analysis in order to bring the case within the 3–year limitation provision (now RCW 4.16-.080(3)).

The next case showed the trespass distinction of subsection (1) was still alive. *Pettigrew v. McCoy–Loggie Timber Co.,* 138 Wash. 619, 245 P. 22 (1926). The defendant allowed a fire set on its land to spread negligently to the plaintiff's land. This action was held to be a trespass on the case and not considered to be a direct invasion of the plaintiff's property. The 2–year catchall limitation was applied.

In 1927, the court held the 2–year catchall liability would apply to all statutorily created liabilities (liability not available at common law). *Robinson v. Lewis Cy.,* 141 Wash. 642, 645, 252 P. 143, 256 P. 503 (1927) (citing *Northern Grain*). Also in 1927, the *Northern Grain* direct/indirect analysis was extended to cover subsection (4) applying to fraud. *Constable v. Duke,* 144 Wash. 263, 257 P. 637 (1927) (the failure of public official to perform duty gave rise to the action—therefore, it was indirect).

By 1937, the *Northern Grain* doctrine had become "settled law". *Noble v. Martin,* 191 Wash. 39, 46, 70 P.2d 1064 (1937). In 1944, the scope of subsection (2) was broadened to include injuries of an intangible nature. The court, however, narrowed its application to "direct, affirmative act[s] which [prevent] another from securing, having, or enjoying some valuable right or privilege." *Luellen v. Aberdeen,* 20 Wn.2d 594, 604, 148 P.2d 849 (1944).

The last time this court applied the *Northern Grain* doctrine it used the direct/indirect analysis to negate the 2–year catchall provision's application to statutorily created liabilities. *State ex rel. Bond v. State,* 59 Wn.2d 493, 497, 368 P.2d 676 (1962). *Bond* held the violation of a preferential right to employment was an injury to the right of a person. Even though the action was unknown at common law, the court brought it under the 3–year limitation statute because it was a *direct* invasion of a personal right.

*Zimmer v. Stephenson,* 66 Wn.2d 477, 403 P.2d 343 (1965) (defendant plowing fireguard on own land on dry and windy day—fire spread and caught plaintiff's wheat on fire) had a factual pattern and legal issue similar to the earlier case of *Pettigrew v. McCoy–Loggie Timber Co.* The court applied the 3–year limitation provision instead of the 2–year catchall provision, and, in expressing its desire to bring the State's limitation laws in accord with contemporary tort doctrine, stated:

> The direct–indirect distinction between trespass and case is "now rejected by most courts, and would appear to be slowly on its way to oblivion." Prosser, Torts § 13, p. 66

(3d ed.). Restatement, Torts §§ 158, 165, has abandoned the distinction, and now regards any tortious intrusion of foreign matter onto the property of another as a trespass.

The common law, along with its forms of action, has long been recognized as capable of growth and expansion in keeping with the necessities of modern society. The writings of Chitty and Coke have long been absent from the library shelves of most practicing attorneys, and, if for no other reason, the fine, though oftentimes indiscernible distinctions, between the ancient writs of trespass and trespass on the case should not be unduly preserved in aid of a statute of limitations.

*Zimmer v. Stephenson,* at 482–83.

By this time, however, the direct/indirect distinction had become so embedded that the next case extended the *Northern Grain* doctrine to include physical injuries to persons. *Peterick v. State,* 22 Wn. App 163, 589 P.2d 250 (1977). In *Peterick,* the families of two workers killed in an explosion at an explosives plant sought damages for wrongful death, basing the workers' ultimate injury on defendant State officials' failure to perform their official duties. *Peterick,* at 169. The Court of Appeals affirmed the dismissal of the action against the State because the plaintiffs filed an action after the 2–year limitation period. In applying the catchall provision, the Court of Appeals held the 3–year limitation period applies only to direct invasions of a plaintiff's person or property rights and not to other actionable conduct which ultimately affects plaintiff's rights.

Besides the continued extension of the fabricated direct/indirect distinction, *Peterick* brought to light the conflict this distinction has with the tort doctrine of concurrent proximate cause. Even though a proximate cause may be factually considered a direct cause of a person's injury, if the cause is indirect under the *Northern Grain* doctrine, the lesser limitation rule would be applied. *See also Gates v. Rosen,* 29 Wn. App. 936, 631 P.2d 993 (1981), *aff'd sub nom. Hall v. Niemer,* 97 Wn.2d 574, 649 P.2d 98 (1982) (the Court of Appeals applied the 2–year catchall provision even though the negligence of the public officials was con-

sidered a proximate cause of the injury).

In *Steele v. Bell*, 37 Wn. App. 337, 679 P.2d 964 (1984), the Court of Appeals erased the need of the *Northern Grain* doctrine for the indirect act to be by a public official (to avoid any constitutional problems) and held the 3–year "injury to the person" provision would apply when the cause of the harm is direct, and the 2–year catchall provision would apply when the cause of the harm is indirect. Thus, Washington case law has gone from the limitation statute interpretation in the 1901 case of *Robinson v. Baltimore & Seattle Mining & Reduction Co.*, 26 Wash. 484, 67 P. 274 (1901) (holding that the catchall provision had nothing to do with the "injury to the person or rights of another" provision) to the 1984 interpretation in *Steele*.

## III

The *Steele* case has continued the confusion of the concurrent–proximate cause/indirect cause distinction. Plaintiffs assert the *Northern Grain* doctrine has been extended beyond contemporary tort doctrine so that whatever utility it may have had in former years has now been exhausted. We agree and now hold that it has and we overrule the direct/indirect injury distinction of *Northern Grain* and its progeny. The language of RCW 4.16.080(2) is clear and should apply to any other injury to the person or rights of another not enumerated in other limitation sections.

The term "injury to the person", where used in a limitation statute, generally is given a comprehensive meaning and has in most instances been construed as broad enough to cover actions for consequential damages. 51 Am. Jur. 2d *Limitation of Actions* § 104 (1970). The prevailing rule is that where a statute limits the time when actions for injuries to the person may be brought "such statute governs all actions the real purpose of which is to recover for such an injury whether based upon contract or tort." 51 Am. Jur. 2d § 105.

The original purpose of the *Northern Grain* doctrine was

to ensure the use of the catchall provision. However, the cases preceding *Northern Grain* viewed the purpose of the catchall provision merely to ensure a limitation provision for any possible cause of action not covered by the other provisions. *See Citizens' Nat'l Bank v. Lucas,* 26 Wash. 417, 418, 67 P. 252 (1901). We believe this early assessment of the statutes to have been correct. Furthermore, RCW 4.16.130 has been held particularly to govern numerous other actions. *See, e.g., Mitchell v. Greenough,* 100 F.2d 184 (9th Cir. 1938), *reh'g denied,* 100 F.2d 1006, *cert. denied,* 306 U.S. 659 (1939) (action to recover damages for conspiracy to deprive party of right to practice law); *Aldrich v. Skinner,* 98 F. 375 (D. Wash. 1899) (action against stockholder of insolvent national bank); *Grussemeyer v. Harper,* 187 Wash. 508, 60 P.2d 702 (1936) (action by stockholders against former directors for loss to corporation).

We return to the original understanding of the statutes: The catchall provision serves as a limitation for any cases not fitting into the other limitation provisions. This serves the State's purpose to compel prompt litigation and not leave persons fearful of litigation unlimited by time. An antiquated direct/indirect analysis should not allow a limitation statute alone to deprive plaintiffs of their day in court. If the cause is so indirect as not to appear to be a proximate cause, then the plaintiff probably will not succeed in the lawsuit.

The judgments of the trial court are reversed and the cases are remanded for further action consistent with this case. The holding in this case applies retroactively solely to cases not yet final at the time of this opinion.

UTTER, BRACHTENBACH, DORE, PEARSON, ANDERSEN, CALLOW, GOODLOE, and DURHAM, JJ., concur.