[No. 26606-3-I.   Division One.   January 21, 1992.]

DELORES JORDAN, *Respondent*, v. BENJAMIN E. BERGSMA, SR., ET AL, *Appellants*, CLYDE M. REES, *Respondent*.

---

[1]*See* RCW 4.16.080.

*Jerry W. Spoonemore, Joseph C. Brown, Jr.,* and *Montgomery, Purdue, Blankinship & Austin; Mark S. Deming,* for appellants.

*William R. Levinson; Douglass A. North* and *Maltman, Weber, Reed, North & Ahrens,* for respondent Jordan.

*Kenneth D. Beckley,* for respondent Rees.

FORREST, J. — Benjamin Bergsma, Sr., his wife, and Benjamin Bergsma, Jr. (Bergsma) appeal the trial court's judgment that they were unjustly enriched when Delores Jor-

dan, by her attorney-in-fact, Dale Prappas (Jordan), satisfied a 15-year-old deed of trust obligation that they held against her property. We reverse.

In January 1971, Jordan and her husband Clyde Rees (Rees) granted a deed of trust with power of sale on their property to Palmer G. Lewis Company (PGL) to guarantee a debt of $7,340. In November 1971, Jordan and Rees's marriage was dissolved and Jordan was given title to the property which was subject to the deed of trust. The dissolution decree required Rees to pay the deed of trust obligation, but there is no record of his doing so.

In August 1986, Jordan entered into a contract to sell the property, with the closing date set for December 16, 1986. In August, a title report issued for the escrow company handling the sale listed the PGL deed of trust as an encumbrance. However, it appears that Jordan was not informed of the encumbrance until the date of closing.

On December 15, 1986, Bergsma purchased PGL's interest in the deed of trust for $4,500. At the closing on December 16, 1986, Jordan was informed of the encumbrance. She was told that the debt needed to be paid in order to close the sale. Jordan agreed to the payment, and a check for $24,992.42 was issued to Bergsma by the escrow company.

Jordan filed suit for recovery of the $24,992.42 paid to Bergsma. The trial court entered judgment for Jordan, awarding the full amount. The trial court found that because the statute of limitations of written contracts[1] had run as to the debt underlying the deed of trust, the obligation represented by the deed of trust was void and Bergsma was unjustly enriched when the obligation was paid.

## UNJUST ENRICHMENT

■ Bergsma asserts that the trial court erred in holding that: (1) the obligation to PGL was void as to all parties,

---

[1] RCW 4.16.040 provides a 6-year statute of limitations for actions arising out of written contracts.

(2) Bergsma acquired nothing of value from PGL, and (3) as a consequence Bergsma was unjustly enriched by the payment of $24,992.42. We agree that the trial court's holdings were in error. Although enforcement of an obligation may be barred by the statute of limitations, the obligation does not become void. In *Lane v. Department of Labor & Indus.*, 21 Wn.2d 420, 426, 151 P.2d 440 (1944), the Supreme Court stated that in regard to a true statute of limitations, "although a remedy may become barred thereunder, the right or obligation is not extinguished." The court echoed this reasoning in *Stenberg v. Pacific Power & Light Co.*, 104 Wn.2d 710, 714, 709 P.2d 793 (1985), stating, "[a] statute of limitation, in effect, deprives a plaintiff of the opportunity to invoke the power of the courts in support of *an otherwise valid claim.*" (Italics ours.) In *Lane* the court contrasted statutes of limitations with statutes of nonclaim. When the period of a statute of nonclaim expires the right or obligation is extinguished.[2] Such is not the case with a statute of limitations.[3] RCW 4.16.040, upon which the trial court relied here, is a statute of limitations, not a statute of nonclaim. The running of the statute of limitations bars the remedy but does not extinguish the debt.

This principle is further supported by the general rule of contract law that a new promise to pay an obligation made after the statute of limitations has run on that obligation is still an enforceable promise.

> [I]f a debtor makes a new promise to his creditor to pay a debt that has already become unenforceable by operation of a statute of limitations, this promise is enforceable in accordance with its own terms without any new consideration. It is supported by the "past consideration." *Though the debtor was protected by a legal bar, he is regarded as still under a moral obligation to pay the barred debt.*

(Footnotes omitted. Italics ours.) 1A A. Corbin, *Contracts* § 214, at 289-90 (1963). The obligation is not erased by the

---

[2]*Lane v. Department of Labor & Indus.*, 21 Wn.2d 420, 425, 151 P.2d 440 (1944). For example, the statute which provides for liens of mechanics and materialmen is a statute of nonclaim. *See* RCW 60.04.100.

[3]*Lane*, at 426.

statute of limitations but merely made unenforceable in court. Thus, the trial court erred in its primary assumption, that the obligation was void.

Bergsma further asserts that the power of sale contained in a deed of trust remains valid even after the statute of limitations has run on the underlying obligation. Thus, the deed of trust remained enforceable. In other words, Bergsma asserts that the statute of limitations never runs against a deed of trust.

There is substantial authority supporting Bergsma's position. Both Professor Glenn,[4] and Professor Osborne,[5] in their authoritative treatises on mortgage law, indicate that common law supports Bergsma's position. Professors Nelson and Whitman, in their treatise on real estate finance law, quote the common expression, "the statute of limitations never runs against the power of sale in a deed of trust.' " G. Nelson & D. Whitman, *Real Estate Finance Law* § 6.11, at 454 n.32 (2d ed. 1985) (quoting *Bank of Italy Nat'l Trust & Sav. Ass'n v. Bentley*, 217 Cal. 644, 20 P.2d 940 (1933)). *Clearing Land Titles*[6] also states that at common law no lapse of time bars exercising the power of sale of a deed of trust, but notes that many states have changed this rule by enacting specific statutory bars on deeds of trust. However, Washington has no such statute.

Against a statutory background similar to that of Washington, the Wyoming Supreme Court in *National Tailoring Co. v.*

---

[4]2 G. Glenn, *Mortgages* § 144, at 822 (1943) states: "Unlike the mortgage, [the deed of trust's] lien runs on forever because of the vague idea that here we have a trust in which the mortgagor himself has interest. In the absence of a statute, therefore, the security would last indefinitely, regardless of the fact that an action upon the debt has meanwhile been barred by the appropriate statute of limitations."

[5]G. Osborne, *Mortgages* § 296, at 611 (2d ed. 1970) states: "[T]here is no time limit on [deeds of trust] except as so specifically provided by statute. Barring of the remedy on the debt has no effect upon the trustee's power to sell the property and pay the debt with the proceeds." (Footnotes omitted.)

[6]P. Basye, *Clearing Land Titles* § 73, at 218 (2d ed. 1970).

*Scott*[7] adopted the position Bergsma espouses and reversed an injunction to stop a nonjudicial foreclosure of a deed of trust on the basis that the statute of limitations had run on the underlying debt. As in the case at bar, the applicable statute of limitations was a general one applying to all written contracts. In Wyoming, as in Washington, a power of sale can be exercised in a nonjudicial foreclosure. The Wyoming court reasoned that based on its wording the general statute of limitations barred actions, and that "action" referred to a demand of enforcement in a court of law. Thus, the Wyoming court reasoned that the general statute of limitations did not bar extrajudicial proceedings, such as nonjudicial foreclosure.

Jordan points out that RCW 7.28.300[8] allows a mortgagor to quiet title to property against a mortgagee when the statute of limitations has run on the debt secured by the mortgage. Jordan argues that this statute is equally applicable to deeds of trust because RCW 61.24.020[9] establishes a general rule that deeds of trust will be treated like mortgages unless otherwise provided in the deed of trust statute. This analysis is supported by *Rustad Heating & Plumbing Co. v. Waldt*,[10] in which our Supreme Court held that the statute governing redemption rights in regard to mortgages is equally applicable to deeds of trust. Although the court treated a deed of trust as a mortgage for that purpose, the court went on to say, "we are not holding that

---

[7]65 Wyo. 64, 196 P.2d 387 (1948).

[8]RCW 7.28.300 reads:
"**Quieting title against outlawed mortgage.** The record owner of real estate may maintain an action to quiet title against the lien of a mortgage on the real estate where an action to foreclose such mortgage would be barred by the statute of limitations, and, upon proof sufficient to satisfy the court, may have judgment quieting title against such mortgage lien."

[9]RCW 61.24.020 reads, in part:
"Except as provided in this chapter, a deed of trust is subject to all laws relating to mortgages on real property."

[10]91 Wn.2d 372, 588 P.2d 1153 (1979).

in all circumstances the word 'mortgage' as used in every statute is to include deeds of trust as well." *Rustad*, at 376. As a policy matter there appears to be no compelling reason to distinguish deeds of trust from mortgages insofar as the right to quiet title when the underlying obligation is barred by the statute of limitations.

■ However, we find it unnecessary to resolve the question of whether RCW 7.28.300 is equally applicable to deeds of trust. Even if applicable, RCW 7.28.300 makes deeds of trust *voidable*, not *void*. Jordan took no steps to have the deed of trust voided. Thus, there was simply no basis for the trial court's ruling that the deed of trust represented a void obligation. Being a valid obligation, albeit perhaps unenforceable, Bergsma was not unjustly enriched when Jordan satisfied that obligation.

## MISREPRESENTATION CLAIM

■ On appeal Jordan argues that the trial court's result can be sustained on the basis of misrepresentation.[11] We disagree. No error is assigned to the findings and accordingly they are verities on appeal.[12] Therefore, the findings before us must provide a basis for misrepresentation; they do not do so.

Jordan asserts that fraud was practiced on PGL by Bergsma,[13] that the fraud prevented Jordan from acquiring the deed of trust, and thus, Bergsma is under a duty of restitution to Jordan. Jordan cites the Restatement of Restitution § 133 which states,

---

[11]It is clear that Jordan abandoned her misrepresentation claims at trial. Indeed, counsel for Jordan explicitly stated at trial, "We are not pursuing our usury or misrepresentation claims." However, since the judgment could be affirmed on any basis supported by the record, we will address the misrepresentation claim presented by Jordan on appeal. *See Sprague v. Sumitomo Forestry Co.*, 104 Wn.2d 751, 709 P.2d 1200 (1985).

[12]*Persing, Dyckman & Toynbee, Inc. v. George Scofield Co.*, 25 Wn. App. 580, 582, 612 P.2d 2, *review denied*, 93 Wn.2d 1029 (1980).

[13]It appears that Bergsma represented to PGL that he was the prospective purchaser of Jordan's property.

> A person who has committed a tort against another by obtaining property through fraud, duress or undue influence upon the transferor, thereby knowingly preventing the other from acquiring the property, is under a duty of restitution to the other.

Restatement of Restitution § 133(1), at 546 (1937). But, as comment *a* to section 133 states, the other must be deprived of "property which otherwise the other would have received". Restatement of Restitution § 133 comment *a*, at 546 (1937). Here Jordan is arguing that Bergsma's action prevented her from receiving the deed of trust for less than the $24,992.42 which she paid to Bergsma.

■ It cannot be said, however, that Jordan would have received the deed of trust at a discount but for Bergsma's actions. Indeed, Jordan did not even know of the deed of trust at the time of Bergsma's purchase. Thus, it is pure speculation that had Jordan approached PGL it would have released the deed of trust to her for less than the full amount of the debt. Because there is no causal connection between Bergsma's actions and Jordan's inability to acquire the deed of trust for less than $24,992.42, section 133 of the Restatement of Restitution is simply inapplicable.

Jordan also seeks to base a misrepresentation claim on the closing agent's statement that the deed of trust was valid. First, based on the authorities heretofore mentioned regarding deeds of trust, such a statement was not clearly erroneous. Second, there is no finding that Bergsma knew of, much less knew the falsity of, the closing agent's representations as to the validity of the deed of trust. Jordan's assertion that the closing agent, Clayton Chenaur (Chenaur), failed to notify her until the last minute of an encumbrance which would prevent closing suggests a plausible cause of action against Chenaur. Informed of the encumbrance in August, when it was discovered, Jordan could have attempted to negotiate with PGL, or closed the sale by indemnifying the title insurer while pursuing relief under RCW 7.28.300.

However, Chenaur was not made a party to the action and there is no finding that Chenaur and Bergsma were coconspirators or acted as joint tortfeasors. On this record, any breach of Chenaur's duty as a closing agent is not chargeable to Bergsma. Thus, the findings of fact do not support a claim of misrepresentation. Reversed.

GROSSE, C.J., and PEKELIS, J., concur.