[No. 18715-2-III.   Division Three.   August 10, 2000.]

PHILLIP M. HUDSON, ET AL., *Appellants*, v. DONALD F. CONDON, ET AL., *Respondents*.

---

868

*David A. Kulisch* (of *Randall & Danskin, P.S.*), for appellants.

*Erika Balazs* (of *Lukins & Annis, P.S.*), for respondents.

SCHULTHEIS, J. — Phillip Hudson's claims against former partner Donald Condon for breaches of fiduciary duty, the lease and the partnership agreement and for reformation of the lease were dismissed on summary judgment. On appeal Dr. Hudson contends the trial court erred in ruling that the relevant statutes of limitations barred all his causes of action. We affirm.

FACTS

In September 1982 Dr. Hudson and Dr. Condon executed a written partnership agreement for mutual ownership and management of a medical/dental building. The partners intended to lease offices in the building (the Center) for their own practices, and orally agreed to have nearly identical leases (subject to the different square footage of their offices) for five-year terms.

Over time, the partners' relationship began deteriorating. They decided to hire real estate agent Tim Mueller to manage their property. Mr. Mueller did not wish to get involved in the partners' disputes, so he informed them he would not disclose information gained from one to the other.

In mid-1993, the partners asked Mr. Mueller to sell the Center. He found a prospective buyer. While the sale was pending in September 1993, the time to renegotiate the five-year leases arrived. Dr. Condon asked Mr. Mueller to prepare his lease with an added provision. Where the former "SURRENDER OF PREMISES" provision stated, "Tenant agrees, upon termination of this Lease, to peacefully quit and surrender the premises without notice, leave the premises neat and clean and to deliver all keys to the premises to Landlord[,]" the new provision added a termination of lease clause. The added language provided that "Tenant and landlord agree that tenant shall have the right to terminate this lease, for any reason whatsoever[.]" Mr. Mueller warned Dr. Condon that the lease change could jeopardize the pending sale, and advised him to tell Dr. Hudson about the change.[1] Neither Mr. Mueller nor Dr. Condon told Dr. Hudson about the change to Dr. Condon's lease. Eventually the sale of the Center fell through, but for other reasons.

Dr. Condon again approached Mr. Mueller in September 1995 and asked him to prepare an addendum to the Condon lease. This addendum, backdated to June 1995, provided

---

[1] Dr. Hudson retained the old lease terms when he signed his new lease in September 1993.

that "The Landlord hereby agrees that all cabinets, cabinetry, shelves, countertops, etc., are the personal property of the Tenant. And, the Landlord hereby agrees that in the event this lease is terminated and the Tenant vacates Suite E, then the Tenant can remove the aforementioned cabinet, cabinetry, etc., accordingly."[2]

By July or August 1995, the partners had begun negotiating a buy-out and dissolution of the partnership. Dr. Hudson offered to buy Dr. Condon's interest and for several months the parties negotiated the sale and the transfer of leases. During negotiations, Dr. Condon suggested and Dr. Hudson approved a provision in the sale agreement that states, "The parties agree that the Condon Lease, including Condon's rights in and to the cabinets and other fixtures, shall continue in full force and effect notwithstanding this Dissolution Agreement."

Executed in October 1995, the sale and dissolution agreement provided that Dr. Hudson was to pay Dr. Condon by February 1, 1996. Dr. Hudson attempted to refinance the property. Early in January 1996, he heard that Dr. Condon was planning to vacate the Center in April. On January 8, Dr. Hudson faxed Dr. Condon the following:

> Had you been up front with me, regarding your move to Northpointe, I would have been able to do some strategic planning regarding the leasing of your suite. With that suite due to be vacant in April, I do not believe that financing will be forthcoming, and the Partnership buy-out will not proceed to completion. I thought it would only be fair to tell you this, before you go any further with your plans to move, inasmuch as it might be a factor in your decision.

On January 24, 1996, Dr. Condon sent Dr. Hudson formal notice of his intent to vacate. Earlier that month, Dr. Hudson had called Mr. Mueller and asked about the surrender provision and the fixtures addendum in Dr. Condon's lease.

---

[2] In all the leases and the addendum, each partner signed as both the landlord and the tenant for his own lease.

Eventually Dr. Hudson was able to obtain the necessary financing and made the buy-out payment on February 1, 1996. Along with the payment, he sent Dr. Condon notice that he reserved his rights to recover damages for breach of fiduciary duties and to contest the lease provisions. Dr. Condon continued to pay rent until he vacated in April 1996, taking with him the cabinetry.

Dr. Hudson and his wife filed suit against Dr. Condon and his wife on February 3, 1999. The complaint listed four causes of action: (1) breach of a fiduciary duty to execute a lease identical to Dr. Hudson's; (2) reformation of the lease, based on fraud and breach of fiduciary duty; (3) breach of the written lease; and (4) conversion. In the prayer for judgment, the Hudsons asked the court to declare Dr. Condon's lease modification and addendum void and to reform the lease to its "intended provisions." The Condons moved for summary judgment in May 1999. They argued that all of the Hudsons' causes of action essentially depended on the court reforming the lease and then finding a breach of the reformed lease. Because actions for reformation and for breach of fiduciary duty have three-year statutes of limitations, they argued, all of the Hudsons' claims were time barred.

In their response to the motion for summary judgment, the Hudsons asserted that their dispute was not about a lease, but about the betrayal of trust and unfair self-dealing of a partner. Their amended complaint, filed in June 1999, added a cause of action for breach of the partnership agreement as the basis for the breach of a fiduciary duty. It also split the breach of fiduciary duty claim into two claims, one for the fixtures provision in the 1993 lease and one for the 1995 surrender addendum. The trial court granted the Condons' motion for summary judgment in August 1999, finding that all the Hudsons' claims were barred by their relevant statutes of limitations. The Hudsons' motion for reconsideration was denied, their claims were dismissed with prejudice, and they were ordered to pay the Condons'

reasonable attorney fees and costs pursuant to the partnership agreement and the lease.[3]

■ ■ Crucial to the analysis of this appeal is the characterization of the Hudsons' causes of action. Once the nature of the claims is established, all that remains is application of the relevant statutes of limitation to the dates each claim accrued. As this is an appeal from an order of summary judgment, we review the order de novo, treating all facts and inferences in a light most favorable to the Hudsons. *Green v. A.P.C. (American Pharm. Co.)*, 136 Wn.2d 87, 94, 960 P.2d 912 (1998). We will uphold the summary judgment if there is no genuine issue of material fact and the Condons are entitled to judgment as a matter of law. *Id.*

■ Statutes of limitations are designed to shield defendants and the judicial system from stale claims. *Douchette v. Bethel Sch. Dist. No. 403*, 117 Wn.2d 805, 813, 818 P.2d 1362 (1991). Evidence may be lost and witnesses' memories may fade if plaintiffs sleep too long on their rights. *Id.* On the other hand, a statute of limitations deprives a plaintiff of the opportunity to invoke the power of the court in support of an otherwise valid claim. *Jordan v. Bergsma*, 63 Wn. App. 825, 828, 822 P.2d 319 (1992) (citing *Stenberg v. Pacific Power & Light Co.*, 104 Wn.2d 710, 714, 709 P.2d 793 (1985)). For the purposes of this analysis we assume, without deciding, the validity of the Hudsons' claims and concentrate on the timeliness of their suit.

Two Washington statutes of limitations are at issue here. RCW 4.16.040 applies a six-year limitation for the commencement of actions "upon a contract in writing, or liability express or implied arising out of a written agreement." RCW 4.16.080 imposes a three-year limitation for actions involving conversion, tort or relief based on fraud.

---

[3] The Condons have not pursued their cross-appeal that challenged the amount of the fees award.

Four of the Hudsons' causes of action—two for breach of fiduciary duty, one for reformation of the Condon lease and one for conversion of the fixtures—are subject to the three-year statute of limitations. RCW 4.16.080(2), (4); *Browning v. Howerton*, 92 Wn. App. 644, 650-51, 966 P.2d 367 (1998) (reformation based on fraud subject to three-year rule of RCW 4.16.080(4)); *Crisman v. Crisman*, 85 Wn. App. 15, 22-23, 931 P.2d 163 (1997) (affirmative act of misrepresentation or concealment subject to three-year rule of RCW 4.16.080(4)).

■■ The Hudsons contend their remaining claims involve breaches of contracts and are therefore timely under the six-year period of RCW 4.16.040(1). We do not agree for two reasons. First, the cause of action for breach of the partnership agreement is grounded, not on breach of a specific term of the contract, but on a tortious breach of fiduciary duty arising from the contract. *See G.W. Constr. Corp. v. Professional Serv. Indus., Inc.*, 70 Wn. App. 360, 364, 853 P.2d 484 (1993) (an action sounds in contract when it alleges breach of a specific term in the contract, without reference to the legal duties imposed by law on that relationship). The partnership agreement contains no specific requirements for lease execution or amendments and does not require partner approval or communication of lease amendments. On the contrary, the agreement's lease provision states that "[n]othing contained herein shall be construed to be a prohibition against any partner[']s self[-]dealing with the partnership." Citing to a provision on management duties and restrictions, the Hudsons claim that execution of the amended Condon lease incurred a partnership obligation in excess of $2,000, disposed of goodwill, and made it impossible to carry out the ordinary business of the partnership. Nothing in the record supports or even infers breach of these specific terms in the partnership agreement. The strongest basis for a breach of contract claim is the oral agreement between the partners to execute essentially identical leases every five years. An action arising from an unwritten partnership agreement (or any

oral contract), however, is subject to a three-year statute of ·
limitations. RCW 4.16.080(3); *Malnar v. Carlson*, 128
Wn.2d 521, 529, 910 P.2d 455 (1996).

■ Second, the cause of action for breach of the lease
relies on rescission of the 1993 and 1995 additions to the
Condon lease. Only if the provisions allowing removal of the
fixtures and at-will termination of the lease are voided will
Dr. Condon's actions constitute breach of the lease. The
Hudsons base their claim for partial rescission on breach of
fiduciary duty and fraud under the partnership contract,
and because those actions sound in tort and fraud, the
applicable statute of limitations is three years. RCW
4.16.080; *Browning*, 92 Wn. App. at 650-51; *see also Pietz v.
Indermuehle*, 89 Wn. App. 503, 511, 949 P.2d 449 (1998).

■ With a three-year statute of limitations established
for all of the Hudsons' claims, we next ask when those
claims accrued. The bedrock claim from which all the other
causes of action arise is the allegation that Dr. Condon
breached his fiduciary duty under the written and oral
partnership agreements when he amended his lease in
1993 and 1995 without notifying Dr. Hudson. The general
rule is that a cause of action accrues and the statute of
limitations begins to run when a party has the right to
apply to a court for relief. *Haslund v. City of Seattle*, 86
Wn.2d 607, 619, 547 P.2d 1221 (1976). This right to apply
for relief arises when the plaintiff can establish each
element of the action. *Id.*

■ The Hudsons' claims allege breach of the fiduciary
duty imposed by the oral and written partnership agree-
ments, and damages proximately caused by that breach.
*Senn v. Northwest Underwriters, Inc.*, 74 Wn. App. 408, 414,
875 P.2d 637 (1994) (elements of a breach of fiduciary duty
claim). The relationship between partners is fiduciary in
nature and imposes a duty on the partner not only to
refrain from making false statements to the copartner, but
also to abstain from any concealment that pertains to the
partnership business. *Bovy v. Graham, Cohen & Wampold*,
17 Wn. App. 567, 570, 564 P.2d 1175 (1977). Here, the

alleged concealment and misrepresentation underlying the Hudsons' claims of breach of fiduciary duty are tantamount to constructive fraud. *Hsu Ying Li v. Tang*, 87 Wn.2d 796, 800, 557 P.2d 342 (1976); *Crisman*, 85 Wn. App. at 22-23. Consequently, the RCW 4.16.080(4) discovery rule for fraud applies. *Crisman*, 85 Wn. App. at 22-23.

Under the express terms of RCW 4.16.080(4), a cause of action for fraud does not accrue until the aggrieved party discovers the facts constituting the fraud. *Sherbeck v. Estate of Lyman*, 15 Wn. App. 866, 868, 552 P.2d 1076 (1976). We infer actual knowledge of fraud if the aggrieved party, through due diligence, could have discovered it. *Id*. at 868-69. Accordingly, the statute of limitations for a damage action based on fraud commences when the aggrieved party discovers, or should have discovered, the fact of fraud and sustains some damage as a consequence. *First Md. Leasecorp v. Rothstein*, 72 Wn. App. 278, 283, 864 P.2d 17 (1993). The plaintiff need not be aware of the full extent of the damages; knowledge of some actual, appreciable damage is sufficient to begin the running of the statute of limitations. *Green*, 136 Wn.2d at 96-97; *Zaleck v. Everett Clinic*, 60 Wn. App. 107, 112, 802 P.2d 826 (1991). The running of the statute is not postponed by the fact that the substantial damages occur later, and is not postponed until the specific damages occur for which the plaintiff seeks recovery. *Green*, 136 Wn.2d at 96-97. While the determination of when a plaintiff suffered actual damage is a question of fact, the issue can be decided as a matter of law if reasonable minds could reach but one conclusion. *Allen v. State*, 118 Wn.2d 753, 760, 826 P.2d 200 (1992); *Haslund*, 86 Wn.2d at 620-21.

In this case, the alleged wrongful acts occurred in September 1993 and September 1995, when Dr. Condon asked Mr. Mueller to add the termination of lease provision and fixtures addendum to his lease. The Hudsons contend Dr. Condon committed additional wrongful acts when he concealed these lease changes from them, when he vacated the building and when he removed the cabinetry. From the

record, it appears that the earliest notice of Dr. Condon's claims to the fixtures was contained in the partnership dissolution and sale agreement, signed October 27, 1995. The parties agreed that Dr. Condon's rights to the cabinets and other fixtures would continue in full force and effect. By early January 1996, Dr. Hudson knew that Dr. Condon would be terminating the lease in April. This is clear because Dr. Hudson sent Dr. Condon a fax on January 8 referring to this fact. On January 24, Dr. Condon sent Dr. Hudson written notice that he would be vacating the building and terminating the lease in April 1996. According to the undisputed declaration of Mr. Mueller, Dr. Hudson called him in January 1996 and asked about the surrender provision and fixtures addendum. Mr. Mueller explained the changes to Dr. Hudson and may have sent copies of the lease and addendum to him at that time.

By all accounts, the Hudsons knew of the wrongful acts that constituted their claims by late January 1996. They strenuously argue, however, that they suffered no damages until Dr. Condon vacated, removed the fixtures and refused to pay additional rent in April 1996. While the Hudsons were not actually faced with a vacant suite until April, the fact that Dr. Condon was leaving and was taking the cabinetry with him was no longer speculative by the end of January. That the Hudsons were given several months' notice could have helped to minimize their damages. In the January 8 fax to Dr. Condon, Dr. Hudson stated that due to the prospective lease vacancy, he did not believe he would be able to finance the buy-out of the partnership. A letter from Dr. Hudson dated January 31, 1996 told Dr. Condon, "your action has thwarted my efforts to refinance the building and has necessitated my making other arrangements to raise the money[.]"

Although the Hudsons now assert they actually had no problem refinancing the building, in January 1996 they claimed they suffered appreciable injury, and evidently they could have brought their claims at that time. Accordingly, their causes of action accrued in January, and that

triggered the running of the statute of limitations. *Green*, 136 Wn.2d at 96-97. Because they failed to file their complaint within the three-year limit of RCW 4.16.080, the trial court properly found as a matter of law that their action was barred, and summary judgment was appropriate.

## ATTORNEY FEES

In a separate order, the trial court granted the Condons' motion for attorney fees based on provisions contained in both the partnership agreement and the lease. The partnership contract entitles the prevailing party to fees and costs "[i]n the event of litigation between the partners related to this Partnership[.]" The leases signed by the partners provide that the losing party in any legal action instituted "by reason of default or breach on the part of either party in the performance of any of the provisions of this Lease" is liable for all reasonable costs and attorney fees. Besides contending the Condons should not have prevailed at trial and won their fees and costs on that basis, the Hudsons also argue that the Condons' cost bill did not segregate the fees that are unrelated to the claims on the partnership agreement and lease. This argument is without merit.

██ ██ Generally attorney fees are not recoverable by the prevailing party as costs of litigation unless the fees are permitted by contract, statute or recognized ground in equity. *Leingang v. Pierce County Med. Bureau, Inc.*, 131 Wn.2d 133, 143, 930 P.2d 288 (1997). Under the clear terms of the partnership agreement here, the prevailing party is entitled to fees and costs expended in any litigation "related" to the partnership. All of the Hudsons' causes of action are related to the partnership agreement and the duties that arise from it. Most claims also involve the lease, which clearly entitles the prevailing party to costs and fees incurred in legal action occasioned by default or breach of the lease. No issues separate from the agreement or the

lease were addressed in this lawsuit. Consequently the trial court did not err in awarding reasonable fees and costs to the Condons. We also award the Condons fees and costs as the prevailing party on appeal, assuming they comply with RAP 18.1. *Boyd v. Davis*, 127 Wn.2d 256, 264, 897 P.2d 1239 (1995).

Affirmed; fees and costs awarded to the Condons pursuant to RAP 18.1.

KURTZ, C.J., and KATO, J., concur.

Reconsideration denied October 16, 2000.

Review denied at 143 Wn.2d 1006 (2001).